[No. S045097. June 20, 1996.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
JESUS ROMERO, Real Party in Interest.

**COUNSEL**

Edwin L. Miller, Jr., and Paul J. Pfingst, District Attorneys, Thomas F. McArdle, Paul M. Morley, Charles E. Nickel and Craig E. Fisher, Deputy District Attorneys, for Petitioner.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Ronald E. Niver, Gerald Engler, David H. Rose and Sanjay T. Kumar, Deputy Attorneys General, Gil Garcetti, District Attorney (Los Angeles), George M. Palmer, Brentford J. Ferreira and Diana L. Summerhayes, Deputy District Attorneys, Gary T. Yancey, District Attorney (Contra Costa), L. Douglas Pipes, Deputy District Attorney, and Kent S. Scheidegger as Amici Curiae on behalf of Petitioner.

No apperance for Respondent.

Francis J. Bardsley, Public Defender, and Gary R. Nichols, Deputy Public Defender, for Real Party in Interest.

Michael P. Judge, Public Defender (Los Angeles), Albert J. Menaster, Tracy Mooney and Alex Ricciardulli, Deputy Public Defenders, Charles H. James, Public Defender (Contra Costa), Ron Boyer, Deputy Public Defender, John T. Philipsborn and R. Clayton Seaman, Jr., as Amici Curiae on behalf of Real Party in Interest.

## OPINION

**WERDEGAR, J.**—Penal Code section 1385, subdivision (a), authorizes a trial court to dismiss a criminal action "in furtherance of justice" on its own motion. (All further statutory citations are to the Penal Code except as noted.) We have held that the power to dismiss an action includes the lesser power to strike factual allegations relevant to sentencing, such as the allegation that a defendant has prior felony convictions. (*People* v. *Thomas* (1992) 4 Cal.4th 206, 209-210 [14 Cal.Rptr.2d 174, 841 P.2d 159]; *People* v. *Burke* (1956) 47 Cal.2d 45, 50-51 [301 P.2d 241].) This case raises the question whether a court may, on its own motion, strike prior felony conviction allegations in cases arising under the law known as "Three Strikes and You're Out." (§ 667, subds. (b)-(i), added by Stats. 1994, ch. 12, § 1, eff. Mar. 7, 1994; see also § 1170.12, added by initiative, Gen. Elec. (Nov. 8, 1994) [Proposition 184].) Although the Legislature may withdraw the statutory power to dismiss in furtherance of justice, we conclude it has not done so in the Three Strikes law. Accordingly, in cases charged under that law, a court may exercise the power to dismiss granted in section 1385, either on the court's own motion or on that of the prosecuting attorney, subject, however, to strict compliance with the provisions of section 1385 and to review for abuse of discretion.

## I. BACKGROUND

### A. *The Three Strikes Law*

The Three Strikes law consists of two, nearly identical statutory schemes designed to increase the prison terms of repeat felons. The earlier provision, which the Legislature enacted, was codified as section 667, subdivisions (b) through (i). The later provision, which the voters adopted through the initiative process, was codified as section 1170.12.[1]

The legislative version of the Three Strikes law began as Assembly Bill No. 971, which was introduced on March 1, 1993. (Assem. Bill No. 971 (1993-1994 Reg. Sess.).) As originally introduced, the bill would have added a new section 1170.12 to the Penal Code, imposing doubled sentences on second-time felons and life sentences on third-time felons. The bill failed in the Assembly Committee on Public Safety on April 20 of that year. A motion to reconsider was granted, but no further hearings on the bill would take place until 1994.

---

[1]Defendant and the Attorney General, the latter appearing as amicus curiae, have asked the court to take judicial notice of materials relevant to the history of Assembly Bill No. 971 and of Proposition 184. Amicus curiae California Appellate Defense Counsel has asked us to take judicial notice of Assembly staff analyses of Assembly Bill No. 2049 (1985-1986 Reg. Sess.), which became section 1385, subdivision (b). These materials are of the type we ordinarily consider in addressing questions of legislative intent. The motions are granted as to these materials.

Meanwhile, on October 7, 1993, a petition to add Proposition 184 to the ballot for the November 1994 General Election began to circulate for signatures. The initiative was loosely based on Assembly Bill No. 971 and likewise proposed to add a new section 1170.12 to the Penal Code. A notable difference between the original bill and the initiative was that the bill counted all prior felonies as "strikes" in determining the defendant's sentence, while the initiative counted prior felonies only if they were defined as "violent" or "serious" in other sections of the Penal Code. (See § 667.5, subd. (c) [defining "violent felony"]; § 1192.7, subd. (c) [defining "serious felony"].) Another notable difference was that the initiative permitted the prosecutor to move to strike prior felony conviction allegations "in the furtherance of justice pursuant to section 1385," while the bill permitted a motion to strike only for insufficient evidence.

On January 3, 1994, while Proposition 184 was circulating, the sponsors of Assembly Bill No. 971 amended it to conform to the language of the initiative, with minor exceptions. The bill underwent its only further significant amendment on January 13, when the proposal was made to codify its provisions as subdivisions (b) through (i) of section 667, rather than as a new section 1170.12. Both the Senate and the Assembly approved the bill on March 3, 1994. The Governor signed it on March 7. It took effect as an urgency measure the same day.

March 7, 1994, was also the last day on which Proposition 184 could lawfully circulate for signatures. On April 6, 1994, the Secretary of State certified the initiative for the ballot, and the voters approved it at the General Election on November 8, 1994. It took effect the next day, codified as section 1170.12.

The case before us involves a crime committed on May 9, 1994. It thus arises under the legislative statute (§ 667, subds. (b)-(i)) rather than under the initiative statute (§ 1170.12). While the two statutes differ in minor respects, no such difference affects the questions before us in this case.[2] In summary, both statutes have this effect: When a defendant is convicted of a felony, and it is pleaded and proved that he has committed one or more prior felonies defined as "violent" or "serious," sentencing proceeds under the Three Strikes law "[n]otwithstanding any other law" (§ 667, subd. (c); § 1170.12, subd. (a).) Prior felonies qualifying as "serious" or "violent" are taken into account regardless of their age. (§ 667, subd. (c)(3); § 1170.12, subd. (a)(3).) The current felony need not be "violent" or "serious." (§ 667, subd. (c); § 1170.12, subd. (a).) If the defendant has only one qualifying prior felony conviction, the prescribed term of imprisonment (or the minimum term if the current offense calls for an indeterminate sentence) is

---

[2]Because the differences between the legislative and the initiative versions of the Three Strikes law do not affect the disposition of this case, we do not at this time address defendant's argument that the initiative statute superseded the legislative statute.

"twice the term otherwise provided as punishment for the current felony conviction." (§ 667, subd. (e)(1); § 1170.12, subd. (c)(1).) If the defendant has two or more prior qualifying felonies, the prescribed sentence is "an indeterminate term of life imprisonment . . . ." (§ 667, subd. (e)(2)(A); § 1170.12, subd. (c)(2)(A).) Those defendants who are sentenced to life become eligible for parole on a date calculated by reference to a "minimum term." The "minimum term" is the greater of: (a) three times the term otherwise provided for the current conviction; (b) twenty-five years; or (c) the term required by section 1170 (the Determinate Sentencing Act of 1976) for the current conviction, including any enhancements, the term required by section 190 (concerning homicide), or the term required by section 3046 (concerning life sentences). (§ 667, subd. (e)(2)(A)(i)-(iii); § 1170.12, subd. (c)(2)(A) (i)-(iii).) Sentencing on all current offenses is generally consecutive (§ 667, subds. (c)(6)-(8); § 1170.12, subds. (a)(6)-(8)) without any aggregate term limitation (§ 667, subd. (c)(1); § 1170.12, subd. (a)(1)). In sentencing, the court may not grant probation, suspend execution or imposition of sentence (§ 667, subd. (c)(2); § 1170.12, subd. (a)(2)), divert the defendant, or commit the defendant to any facility other than state prison (§ 667, subd. (c)(4); § 1170.12, subd. (a)(4)).

B. *Facts*

On June 3, 1994, the District Attorney of San Diego County filed an information in the superior court charging defendant Jesus Romero with possession of a controlled substance, namely 0.13 grams of cocaine base, in violation of Health and Safety Code section 11350, subdivision (a). The information also alleged defendant had previously been convicted of the following felonies on the dates indicated: second degree burglary (§ 459) on June 25, 1980; attempted burglary of an inhabited dwelling (§§ 459, 664) on November 16, 1984; first degree burglary of an inhabited dwelling (§ 459) on September 2, 1986; and possession of a controlled substance (Health & Saf. Code, § 11350, subd. (a)) on April 6, 1992, and June 8, 1993.

Defendant's two prior serious felonies (see § 667, subd. (d)(1); § 1192.7, subd. (c) [defining "serious felony"]), namely burglary and attempted burglary of inhabited dwellings, made him eligible for a life sentence under the Three Strikes law. (§ 667, subd. (e)(2).) Without the prior felony conviction allegations, defendant's sentence would fall between one and six years. The current offense, possession of a controlled substance (Health & Saf. Code, § 11350, subd. (a)), is punishable by sixteen months, two years, or three years in state prison (*ibid.*; Pen. Code, § 18). The three prior felonies for which defendant served prison terms within the last five years, unless stricken pursuant to section 1385, would result in three consecutive one-year

enhancements added to the base term for possession of a controlled substance. (§ 667.5, subd. (b).) Defendant's prior felonies do not call for five-year enhancements (§ 667, subd. (a)) because the current offense is not defined as a "serious felony." (§ 1192.7, subd. (c).)

Defendant pled not guilty. At a subsequent hearing, the court indicated its willingness to consider striking the prior felony conviction allegations if defendant changed his plea to guilty as charged on all counts. The prosecutor objected to that procedure, arguing the court had no power to dismiss prior felony allegations in a Three Strikes case unless the prosecutor asked the court to do so. The court disagreed. To interpret the Three Strikes law in this way, the court reasoned, would violate the constitutional doctrine of separation of powers. (Cal. Const., art. III, § 3; see *People* v. *Tenorio* (1970) 3 Cal.3d 89 [89 Cal.Rptr. 249, 473 P.2d 993].) After cautioning defendant that the court "was making no promises in the case," the court permitted defendant to change his plea and struck the prior felony conviction allegations. At the sentencing hearing, the court heard further argument by the prosecuting attorney on the propriety of striking the prior felony conviction allegations. The court considered the prosecutor's arguments about the requirements of the Three Strikes law, defendant's criminal history and history of drug abuse, and the court's knowledge of sentences imposed in similar cases. Having done so, the court reaffirmed its decision to strike the prior felony conviction allegations and imposed a sentence of six years in state prison. This sentence represented the upper term for possession of a controlled substance (§ 11350, subd. (a)) plus three consecutive one-year enhancements for defendant's prior felony convictions (§ 667.5, subd. (b)).

The district attorney petitioned for a writ of mandate to require the superior court to vacate its order striking the prior felony conviction allegations and to resentence defendant accordingly. The Court of Appeal concluded the trial court had no power to dismiss prior felony allegations on its own motion in a Three Strikes case; the court therefore directed issuance of a writ requiring the trial court to vacate the sentence and to permit defendant to withdraw his plea. We granted defendant's petition for review.

## II. DISCUSSION

The ultimate question before us is whether a trial court may dismiss prior felony conviction allegations in furtherance of justice on its own motion in a case brought under the Three Strikes law. In answering this question, two statutes are of central importance. The first is section 1385 (hereafter section 1385, 1385(a), or 1385(b), as appropriate). It provides as follows: "(a) The judge or magistrate may, either of his or her own motion or upon the

application of the prosecuting attorney, and in the furtherance of justice, order an action to be dismissed. The reasons for the dismissal must be set forth in an order entered upon the minutes. No dismissal shall be made for any cause which would be ground of demurrer to the accusatory pleading. [¶] (b) This section does not authorize a judge to strike any prior conviction of a serious felony for purposes of enhancement of a sentence under Section 667."[3]

█ As mentioned, we have construed section 1385(a) as permitting a judge to dismiss not only an entire case, but also a part thereof, including the allegation that a defendant has previously been convicted of a felony. (*People* v. *Thomas*, *supra*, 4 Cal.4th at pp. 209-210; *People* v. *Burke*, *supra*, 47 Cal.2d at pp. 50-51.) When a court strikes prior felony conviction allegations in this way, it " 'does not wipe out such prior convictions or prevent them from being considered in connection with later convictions.' " (*People* v. *Burke*, *supra*, 47 Cal.2d at p. 51.) Instead, the order striking such allegations simply embodies the court's determination that, " 'in the interest of justice' defendant should not be required to undergo a statutorily increased penalty which would follow from judicial determination of [the alleged] fact." (*Id.* at p. 50.)

The other statute of central importance to this case is section 667, subdivision (f) (hereafter section 667(f), 667(f)(1), or 667(f)(2), as appropriate). A part of the Three Strikes law, the statute provides as follows: "(f)(1) Notwithstanding any other law, subdivisions (b) to (i), inclusive, shall be applied in every case in which a defendant has a prior felony conviction as defined in subdivision (d). The prosecuting attorney shall plead and prove each prior felony conviction except as provided in paragraph (2). [¶] (2) The prosecuting attorney may move to dismiss or strike a prior felony conviction allegation in the furtherance of justice pursuant to Section 1385, or if there is insufficient evidence to prove the prior conviction. If upon the satisfaction of the court that there is insufficient evidence to prove the prior felony conviction, the court may dismiss or strike the allegation." The initiative version of the statute contains an identically worded provision. (§ 1170.12, subd. (d).)

█ Defendant argues that the Three Strikes law, if interpreted to permit a court to strike a prior felony conviction allegation *only* on the prosecutor's motion, violates the doctrine of separation of powers. █ The doctrine became a part of California law through the adoption of article III, section 3, of the state Constitution. The section provides that "[t]he powers of state government are legislative, executive, and judicial. Persons charged with the

---

[3]The district attorney's argument that section 1385(b) refers to the Three Strikes law is discussed at page 525 et seq., *post.*

exercise of one power may not exercise either of the others except as permitted by this Constitution." (*Ibid.*) We have said the doctrine's "primary purpose is to prevent the combination in the hands of a single person or group of the basic or fundamental powers of government." (*Parker* v. *Riley* (1941) 18 Cal.2d 83, 89 [113 P.2d 873, 134 A.L.R. 1405].) Of the many decisions articulating the separation of powers doctrine, defendant relies primarily on *People* v. *Tenorio, supra,* 3 Cal.3d 89, and opinions following *Tenorio.* (*People* v. *Superior Court* (*On Tai Ho*) (1974) 11 Cal.3d 59, 64-68 [113 Cal.Rptr. 21, 520 P.2d 405]; *People* v. *Navarro* (1972) 7 Cal.3d 248, 256-265 [102 Cal.Rptr. 137, 497 P.2d 481]; *In re Cortez* (1971) 6 Cal.3d 78, 82-90 [98 Cal.Rptr. 307, 490 P.2d 819]; *Esteybar* v. *Municipal Court* (1971) 5 Cal.3d 119, 124-128 [95 Cal.Rptr. 524, 485 P.2d 1140]; *People* v. *Clark* (1970) 3 Cal.3d 97, 98-99 [89 Cal.Rptr. 253, 473 P.2d 997]; *People* v. *Clay* (1971) 18 Cal.App.3d 964, 965-971 [96 Cal.Rptr. 213].)

We examine the impact of the separation of powers doctrine at the outset because constitutional considerations necessarily inform our interpretation of the statutory language. "If a statute is susceptible of two constructions, one of which will render it constitutional and the other unconstitutional in whole or in part, or raise serious and doubtful constitutional questions, the court will adopt the construction which, without doing violence to the reasonable meaning of the language used, will render it valid in its entirety, or free from doubt as to its constitutionality, even though the other construction is equally reasonable. [Citations.] The basis of this rule is the presumption that the Legislature intended, not to violate the Constitution, but to enact a valid statute within the scope of its constitutional powers." (*Miller* v. *Municipal Court* (1943) 22 Cal.2d 818, 828 [142 P.2d 297]; see also *San Francisco Taxpayers Assn.* v. *Board of Supervisors* (1992) 2 Cal.4th 571, 581 [7 Cal.Rptr.2d 245, 828 P.2d 147]; cf. *Crowell* v. *Benson* (1932) 285 U.S. 22, 62 [76 L.Ed. 598, 619, 52 S.Ct. 285] ["When the validity of [an] act of Congress is drawn in question, and even if a serious doubt of constitutionality is raised, it is a cardinal principle that this Court will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided." (Fn. omitted)].)

We begin with the leading case, *People* v. *Tenorio, supra,* 3 Cal.3d 89. The defendant in *Tenorio* was charged with possession of marijuana in violation of Health and Safety Code section 11350. The prosecutor alleged the defendant had previously been convicted of the same offense. While the statute did not mandate a prison sentence for a first offense, for a second offense the statute required the trial court to impose a term of two to ten years. A related statute purported to bar the court from striking the prior-conviction allegation without the prosecutor's consent, in these words:

" '[n]o allegation of fact which, if admitted or found to be true, would change the penalty for the offense charged from what the penalty would be if such fact were not alleged and admitted or proved to be true may be dismissed by the court or stricken from the accusatory pleading except upon motion of the district attorney.' " (3 Cal.3d at p. 91, quoting former Health & Saf. Code, § 11718.) Despite this statute, the trial court struck the prior-conviction allegation, reasoning that the Legislature had violated the separation of powers doctrine by giving the prosecutor the power to veto the court's decision to dismiss. The People appealed, and we granted review.

We had addressed the same issue just eight years earlier in *People* v. *Sidener* (1962) 58 Cal.2d 645 [25 Cal.Rptr. 697, 375 P.2d 641]. In an opinion for a majority of four, Justice Traynor wrote that Health and Safety Code section 11718 did not violate the separation of powers doctrine; instead, section 11718 merely adopted part of the prosecutor's common law power of nolle prosequi. California's first Legislature had abolished the doctrine of nolle prosequi in a statute that later became Penal Code section 1386.[4] (Crim. Prac. Act of 1850; Stats. 1850, ch. 119, § 630, p. 323.) Nevertheless, Justice Traynor reasoned, a prosecutor who had enjoyed the power of nolle prosequi would have been able to dismiss charges at any time—before the jury was impaneled, while the case was before the jury, or after verdict. "It would exalt form over substance," Justice Traynor wrote, "to hold that broad constitutional principles of separation of powers and due process of law permit vesting complete discretion in the prosecutor before the case begins, but deny him all discretion once the information is filed." (58 Cal.2d at pp. 650-651.)

Justice Schauer, joined by Justices McComb and White, dissented. (*People* v. *Sidener, supra*, 58 Cal.2d 645, 652 (dis. opn. of Schauer, J.); see also *id.* at p. 674 (dis. opn. of White, J.).) Justice Schauer criticized Justice Traynor's historical premise, arguing that the power of nolle prosequi had never existed in California or the territories that became California. (*People* v. *Sidener, supra*, 58 Cal.2d at pp. 658-662 (dis. opn. of Schauer, J.).) Furthermore, Justice Schauer reasoned, the disposition of pending charges was a judicial, rather than a prosecutorial or executive, function; accordingly, the statute in question "violate[d] [the] requirement of separation of powers by subjecting the exercise of an inherently judicial function to the unfettered and unreviewable discretion of the district attorney, a member of the executive branch of government." (*Id.* at p. 671.)

In *People* v. *Tenorio, supra*, 3 Cal.3d 89, the court unanimously overruled *People* v. *Sidener, supra*, 58 Cal.2d 645, largely adopting the reasoning of

---

[4]"The entry of a nolle prosequi is abolished, and neither the Attorney General nor the district attorney can discontinue or abandon a prosecution for a public offense, except as provided in Section 1385." (§ 1386.)

Justice Schauer's dissenting opinion in that case. The author of the opinion in *Tenorio*, and one other justice, had signed Justice Traynor's opinion in *Sidener*. Nevertheless, having "reexamined the views expressed therein," the court "conclude[d] that *Sidener* must be overruled." (*People* v. *Tenorio, supra,* 3 Cal.3d at p. 91.)

Because the precise holding in *People* v. *Tenorio, supra,* 3 Cal.3d 89, is critically important to the case before us, it is perhaps best to let the court that decided *Tenorio* speak in its own words. These are the court's reasons for overruling its decision in *People* v. *Sidener, supra,* 58 Cal.2d 645, and holding unconstitutional a statute purporting to empower a prosecutor to veto a court's decision to dismiss a prior conviction allegation:

"Because of the uncertainties in the law prior to 1850 [regarding the power of nolle prosequi], we agree with all of the justices in *Sidener* that arguments based upon California's legal history prior to that date are undeterminative.

"The history from and after the 1850 Legislature, however, is clear: No decision, and no legislation, prior to the adoption of [Health and Safety Code] section 11718 denied that the judiciary has that power to dismiss which was originally codified in the forerunner of section 1385. The prosecutor has never been able to 'exercise' the power to dismiss a charged prior—he has only been able to invite the judicial exercise of that power. Section 11718 provides that no prior found true 'may be dismissed *by the court* or stricken from the accusatory pleading *except* upon motion of the district attorney.' (Italics added.) As Justice Schauer argued, the section itself recognizes that the dismissal power is still exercised by the court, but purports to condition that exercise upon a prosecutor's prior approval. Thus, even if the Legislature could constitutionally remove the power to strike priors from the courts, it has not done so, but rather has purported to vest in the prosecutor the power to foreclose the exercise of an admittedly judicial power by an appropriate judicial officer. It is no answer to suggest that this is but a lesser included portion of the prosecutor's discretion to forego prosecution, as the decision to forego prosecution does not itself deprive persons of liberty.

■ "When the decision to prosecute has been made, the process which leads to acquittal or to sentencing is fundamentally judicial in nature. Just as the fact of prosecutorial discretion prior to charging a criminal offense does not imply prosecutorial discretion to convict without a judicial determination of guilt, discretion to forego prosecution does not imply discretion to sentence without a judicial determination of those factors which the Legislature has never denied are within the judicial power to determine and which

relate to punishment. The judicial power is compromised when a judge, who believes that a charge should be dismissed in the interests of justice, wishes to exercise the power to dismiss but finds that before he may do so he must bargain with the prosecutor. The judicial power must be independent, and a judge should never be required to pay for its exercise." (*People* v. *Tenorio*, *supra*, 3 Cal.3d at p. 94.)

One may fairly summarize the court's reasoning in this way: Whether or not the power of nolle prosequi ever existed, and conceding the Legislature's power to bar a court from dismissing certain charges altogether, when the Legislature does permit a charge to be dismissed the ultimate decision whether to dismiss is a judicial, rather than a prosecutorial or executive, function; to require the prosecutor's consent to the disposition of a criminal charge pending before the court unacceptably compromises judicial independence.

The court in *People* v. *Tenorio*, *supra*, 3 Cal.3d 89, expressly declared that its holding would apply retroactively. (*Id.* at p. 95, fn. 2.) The court included in its opinion the specific direction that "[a]ny prisoner suffering a sentence imposed after the effective date of Health and Safety Code section 11718 (Sept. 18, 1959) and augmented by virtue of a prior narcotics conviction may file a habeas corpus petition with the superior court inviting the exercise of discretion to dismiss the prior conviction." (*Ibid.*) Subsequently, the court unanimously granted relief to defendants who had been sentenced before the decision in *Tenorio* by trial courts who had, for that reason, misunderstood the scope of their discretion. (*People* v. *Clark*, *supra*, 3 Cal.3d 97; *In re Cortez*, *supra*, 6 Cal.3d 78.)

In subsequent cases, the court relied on *People* v. *Tenorio*, *supra*, 3 Cal.3d 89, to hold unconstitutional other statutes purporting to give prosecutors the power to veto similar judicial decisions related to the sentencing or other disposition of criminal charges. In *People* v. *Navarro*, *supra*, 7 Cal.3d at pages 258-260, the court unanimously held unconstitutional a statute (former Welf. & Inst. Code, § 3051) requiring a trial court to obtain the prosecutor's consent before sentencing a defendant to a treatment program for narcotics addicts. In *Esteybar* v. *Municipal Court*, *supra*, 5 Cal.3d at pages 124-128, the court unanimously invalidated a statute (former § 17, subd. (b)(5)) forbidding a trial court, without the prosecutor's approval, to treat a "wobbler" as a misdemeanor rather than as a felony. In *People* v. *Superior Court (On Tai Ho)*, *supra*, 11 Cal.3d at pages 64-68, the court struck down a law (former § 1000.2) permitting a prosecutor to veto a court's decision to divert a defendant charged with a narcotics offense to a pretrial program of treatment and rehabilitation. (See also *People* v. *Clay*, *supra*, 18 Cal.App.3d

at pp. 967-970 [relying on *Tenorio* to invalidate a statute (former § 1203) permitting the court to grant probation in certain cases only with the concurrence of the district attorney].) Following each of these decisions, the Legislature repealed the invalid statute or amended it to remove the provision purporting to give a prosecutor the power to veto a judicial decision.[5]

In construing the Three Strikes law we cannot ignore the closely relevant holding of *People* v. *Tenorio, supra,* 3 Cal.3d 89, because we must give the law a constitutional interpretation if that is reasonably possible. (See *ante,* p. 509.) The statute this court invalidated in *Tenorio* provided that "no allegation of fact which, if admitted or found to be true, would change the penalty for the offense charged from what the penalty would be if such fact were not alleged and admitted or proved to be true may be dismissed by the court or stricken from the accusatory pleading except upon motion of the district attorney." (Former Health & Saf. Code, § 11718.) The applicable provision of the Three Strikes law (§ 667(f)(2); § 1170.12, subd. (d)(2)), if construed as the district attorney would have us construe it, would have precisely the same effect: A court that was convinced, in the proper exercise of its discretion, that justice demanded the dismissal of a prior felony conviction allegation pursuant to section 1385, would have no power to dismiss unless the prosecutor consented. So interpreted, the statute would appear to violate the doctrine of separation of powers.[6]

The district attorney, and amici curiae supporting his position, argue the Three Strikes law can be construed as barring a court from dismissing prior felony conviction allegations sua sponte pursuant to section 1385 without violating the separation of powers doctrine. The argument may be summarized as follows: The Legislature may completely eliminate a trial court's power to strike prior felony allegations. (*People* v. *Thomas, supra,* 4 Cal.4th at pp. 210-211; *People* v. *Valencia* (1989) 207 Cal.App.3d 1042, 1045 [255 Cal.Rptr. 180]; cf. *People* v. *Tanner* (1979) 24 Cal.3d 514, 519, fn. 3 [156 Cal.Rptr. 450, 596 P.2d 328].) If the Legislature, having eliminated that

---

[5]Former Health and Safety Code section 11718 (see *People* v. *Tenorio, supra,* 3 Cal.3d 89) was repealed. (Stats. 1972, ch. 1407, § 2, p. 2987.) Former Welfare and Institutions Code section 3051 (see *People* v. *Navarro, supra,* 7 Cal.3d 248) was amended. (Stats. 1980, ch. 822, § 1, p. 2584.) Former Penal Code section 1000.2 (*People* v. *Superior Court* (*On Tai Ho*), *supra,* 11 Cal.3d 59) was amended. (Stats. 1975, ch. 357, § 1, p. 801.) Former Penal Code section 17, subdivision (b)(5) (see *Esteybar* v. *Municipal Court, supra,* 5 Cal.3d 119) was amended. (Stats. 1975, ch. 664, § 1, p. 1454.) Former section 1203 (see *People* v. *Clay, supra,* 18 Cal.App.3d 964) was amended. (Stats. 1975, ch. 1004, § 1, p. 2354.)

[6]Defendant has asked us to take judicial notice of the transcript of a sentencing hearing in another case, suggesting the transcript discloses that at least one prosecutor has attempted to use the Three Strikes law to control a judge's disposition of criminal charges. We conclude that the transcript is not relevant to the statutory construction and constitutional issues before us and, therefore, deny defendant's motion as to the transcript.

power, chooses to exercise additional control over the criminal process by subjecting the prosecutor's charging discretion to judicial oversight, then that additional step does not violate the separation of powers. The Three Strikes law, to continue the argument, can be interpreted as having such an effect: It requires a prosecutor to plead and prove all known prior felony convictions (see § 667(f)(1); § 1170.12, subd. (d)(1)), but permits the prosecutor to ask the court to strike any prior felony conviction allegations on which the prosecutor, in furtherance of justice or for insufficient evidence, does not wish to proceed (see § 667(f)(2); § 1170.12, subd. (d)(2)). The combined effect of these provisions, to conclude the argument, amounts to judicial oversight of the prosecutor's charging discretion rather than a limitation on the court's power to strike, and enhances judicial power rather than restricting it.

This view of the statute is impossible to accept. To describe the statute as subjecting the prosecutor's charging discretion to judicial oversight is sophistic. The statute does not purport to require the court to oversee the prosecutor's charging decisions. Nor does the court, in reality, exercise any power over the prosecutor's charging decisions. Any decision to dismiss is necessarily made *after* the prosecutor has invoked the court's jurisdiction by filing criminal charges. "[O]nce the state is ready to present its case in a judicial setting, 'the prosecutorial die has long since been cast.' " (*People* v. *Superior Court* (*Greer*) (1977) 19 Cal.3d 255, 263 [137 Cal.Rptr. 476, 561 P.2d 1164], quoting *People* v. *Superior Court* (*On Tai Ho*), *supra*, 11 Cal.3d at p. 650.) In comparison, the restriction on the court's power to dismiss is real: Construing the law as the district attorney construes it, the court may not dismiss or strike a prior felony allegation except on the prosecutor's motion.

The notion that a statute with the effect described may be construed and justified as dealing with charging discretion, rather than with the court's disposition of pending charges, was expressly and flatly rejected in *People* v. *Tenorio*, *supra*, 3 Cal.3d at page 94 (see *ante*, p. 511): "When the decision to prosecute has been made, the process which leads to acquittal or to sentencing is fundamentally judicial in nature." (See also *People* v. *Superior Court* (*On Tai Ho*), *supra*, 11 Cal.3d at p. 66 ["[W]hen the jurisdiction of a court has been properly invoked by the filing of a criminal charge, the *disposition* of that charge becomes a judicial responsibility."]; *Esteybar* v. *Municipal Court*, *supra*, 5 Cal.3d at p. 127 [same].)

The Attorney General suggests the Three Strikes law serves the purpose of the separation of powers doctrine by making the decision to dismiss under section 1385 a "joint" decision, in the sense that the court and the prosecutor

each may veto the other's preferred disposition. The restriction on the prosecutor's charging discretion contained in the Three Strikes law (see § 667(f)(1) [requiring the prosecutor to "plead and prove" all prior felony convictions]), the Attorney General argues, distinguishes the Three Strikes law from the statute involved in *People* v. *Tenorio, supra,* 3 Cal.3d 89, which limited the court's power without also limiting the prosecutor's charging discretion. This view of the statute, however, does not avoid *Tenorio*'s holding that the disposition of a charge is a judicial responsibility. Interference with the traditional prerogatives of the executive cannot justify interference with the independence of the judiciary.[7]

The Attorney General also argues that events subsequent to our decision in *People* v. *Tenorio, supra,* 3 Cal.3d 89, afford a basis for questioning its validity. "Since *Tenorio*," he writes, "the Legislature and the electorate have repeatedly applied the rule that judicial discretion under section 1385 may be curtailed. (See *People* v. *Thomas, supra,* 4 Cal.4th at p. 208; *People* v. *Tanner, supra,* 24 Cal.3d at pp. 520-521; *People* v. *Valencia[, supra,* 207 Cal.App.3d at p. 1045].) While it may have been true when *Tenorio* was decided that from 1850 until then 'no legislation . . . denied that the judiciary has that power to dismiss which was originally codified in the forerunner of section 1385' (*People* v. *Tenorio, supra,* 3 Cal.3d at p. 94), such is obviously not the case today."

The Attorney General has misconstrued the quoted passage from *People* v. *Tenorio, supra,* 3 Cal.3d at page 94. In context, the court was not claiming a power to dismiss, in furtherance of justice, that would be exempt from legislative restriction. Instead, the court maintained only, as its next sentence explains, that "[t]he prosecutor has never been able to '*exercise*' the power to dismiss a charged prior—he has only been able to *invite* the judicial exercise of that power." (*Ibid.,* italics added.) In other words, dismissal—for whatever reason—is a judicial rather than an executive function. While the power of nolle prosequi might permit a prosecutor to make the unilateral decision to abandon a prosecution, the power does not exist. (§ 1386.) Therefore, the prosecutor may ask the court to dismiss pursuant to section 1385, but "neither the Attorney General nor the district attorney can discontinue or

---

[7]Amicus curiae California Appellate Defense Counsel suggests that section 667(f)(1), which requires the prosecutor to "plead and prove" all prior felony convictions, may violate separation of powers as between the legislative and the executive branch, since the latter has traditionally retained broad discretion to determine whom, and for what offenses, to prosecute. (See *People* v. *Municipal Court (Pellegrino)* (1972) 27 Cal.App.3d 193, 203-208 [103 Cal.Rptr. 645, 66 A.L.R.3d 717]; *People* v. *Smith* (1975) 53 Cal.App.3d 655, 657-660 [126 Cal.Rptr. 195]; see also *People* v. *Superior Court (Greer), supra,* 19 Cal.3d at pp. 262-262.) The district attorney notes the issue but does not advance it "[i]n this case." We intimate no view on the issue.

abandon a prosecution for a public offense, except as provided in Section 1385." (§ 1386.)

That the Legislature and the electorate may eliminate the courts' power to make certain sentencing choices may be conceded. "[S]ubject to the constitutional prohibition against cruel and unusual punishment, the power to define crimes and fix penalties is vested exclusively in the legislative branch." (*Keeler* v. *Superior Court* (1970) 2 Cal.3d 619, 631 [87 Cal.Rptr. 481, 470 P.2d 617, 40 A.L.R.3d 420]; see also *People* v. *Thomas, supra,* 4 Cal.4th at pp. 210-211; *People* v. *Tanner, supra,* 24 Cal.3d at p. 519, fn. 3.) It does not follow, however, that having given the court the power to dismiss, the Legislature may therefore "condition its exercise upon the approval of the district attorney." (*People* v. *Navarro, supra,* 7 Cal.3d at p. 260.) This court has not upheld any law purporting to subject to prosecutorial approval the court's discretion to dispose of a criminal charge. Instead, we have consistently held such laws unconstitutional. (See *People* v. *Superior Court (On Tai Ho), supra,* 11 Cal.3d at pp. 64-68; *People* v. *Navarro, supra,* 7 Cal.3d at pp. 256-265; *In re Cortez, supra,* 6 Cal.3d at pp. 82-90; *Esteybar* v. *Municipal Court, supra,* 5 Cal.3d at pp. 124-128; *People* v. *Clark, supra,* 3 Cal.3d at pp. 98-99; *People* v. *Clay, supra,* 18 Cal.App.3d at pp. 965-971.) The Legislature, as indicated (*ante,* pp. 512-513), has deferred to the constitutional principle declared in those decisions by repealing or amending the invalid statutes.

The cases cited by the Attorney General are not to the contrary. In *People* v. *Thomas, supra,* 4 Cal.4th 206, we upheld a law (§ 12022.5, subd. (a)) requiring the court to impose an enhanced sentence on any person who personally uses a firearm in the commission or attempted commission of a felony. Because the law made no exception for cases in which the prosecutor requested the court to strike, the separation of powers question at issue in this case was not implicated. The same is true of *People* v. *Tanner, supra,* 24 Cal.3d 514, in which we upheld a law (§ 1203.06) barring probation for certain defendants who used firearms in committing their offenses, and of *People* v. *Valencia, supra,* 207 Cal.App.3d 1042, in which the Court of Appeal upheld a law (§ 1385(b)) withdrawing courts' power to strike prior serious felony conviction allegations made for the purpose of enhancing sentence under section 667, subdivision (a). None of these statutes purported to make the exercise of a judicial power subject to the prosecutor's approval.

Nor is there anything to the contrary in *Davis* v. *Municipal Court* (1988) 46 Cal.3d 64 [249 Cal.Rptr. 300, 757 P.2d 11], in which the court upheld statutes (§§ 1001.2, subd. (b), 1001.50, subd. (b)) granting local district attorneys the authority to approve or disapprove local diversion programs.

The design of diversion programs is not historically, or necessarily, a judicial function. Moreover, the statute avoided any separation of powers problem related to the disposition of charges with the provision that nothing therein "shall authorize the prosecutor to determine whether a particular defendant shall be diverted." (§ 1001.2, subd. (b).) We recognized in *Davis* that a prosecutor might, in effect, preclude diversion in a particular case by charging a "wobbler" as a felony rather than as a misdemeanor; this was possible because the statute permitted local agencies to adopt programs barring diversion for defendants initially charged with felonies. But this result, we reasoned, was entirely consistent with *People* v. *Tenorio, supra*, 3 Cal.3d 89, and its progeny, because "in all of those cases the challenged statutory provisions purported to give a prosecutor the right to veto a decision made by a court *after* criminal charges had already been filed. None of those cases suggests that the exercise of prosecutorial discretion *prior* to the filing of such charges improperly subordinates the judicial branch to the executive in violation of the Constitution, even though the prosecutor's exercise of such charging discretion inevitably affects the sentencing or other dispositional options available to the court." (*Davis* v. *Municipal Court, supra*, 46 Cal.3d at p. 82, italics in original.)

Thus, each of the decisions cited by the Attorney General respects the principle that underlies *People* v. *Tenorio, supra*, 3 Cal.3d at page 94: When the jurisdiction of a court has been properly invoked by the filing of a criminal charge, the disposition of that charge becomes a judicial responsibility. (See also *People* v. *Superior Court* (*On Tai Ho*), *supra*, 11 Cal.3d at p. 66; *Esteybar* v. *Municipal Court, supra*, 5 Cal.3d at p. 127.) As the foregoing discussion demonstrates, there is grave doubt whether the statute before us could be construed as the district attorney would construe it without overruling *Tenorio* and rejecting the principle underlying that decision. Yet the holding in *Tenorio* represents the considered view of a unanimous court, expressly overruling a divided opinion announced only eight years earlier. (*People* v. *Sidener, supra*, 58 Cal.2d 645.) In subsequent opinions this court has followed *Tenorio* and extended its reasoning to analogous situations. (See *People* v. *Superior Court* (*On Tai Ho*), *supra*, 11 Cal.3d at pp. 64-68; *People* v. *Navarro, supra*, 7 Cal.3d at pp. 256-265; *In re Cortez, supra*, 6 Cal.3d at pp. 82-90; *Esteybar* v. *Municipal Court, supra*, 5 Cal.3d at pp. 124-128; *People* v. *Clark, supra*, 3 Cal.3d at pp. 98-99; *People* v. *Clay, supra*, 18 Cal.App.3d at pp. 965-971.) Under these circumstances, no sufficient reason to reconsider the decision appears to exist.[8]

 It is against this background that we consider the language of the Three Strikes law to determine whether the Legislature (and the electorate)

---

[8]The district attorney argues that section 667(f)(2), if determined to violate separation of powers, would be severable. The effect of severing subdivision (f)(2), he argues, "would be to preclude the trial court from dismissing or striking 'three strikes' priors in the furtherance

did, or did not, intend to give prosecuting attorneys the power to veto judicial decisions to dismiss prior felony conviction allegations in furtherance of justice under section 1385. In doing so, as explained at the outset, we construe the law to avoid serious doubts as to its constitutionality if that can be done without doing violence to the reasonable meaning of the statutory language. (*San Francisco Taxpayers Assn.* v. *Board of Supervisors, supra*, 2 Cal.4th at p. 581; *Miller* v. *Municipal Court, supra*, 22 Cal.2d at p. 828.) "It is not to be presumed that the Legislature would deliberately enact a statute prohibited by the Constitution." (*People* v. *Navarro, supra*, 7 Cal.3d at p. 260.)

■ As mentioned, the judicial power to reduce a defendant's sentence by striking a sentencing allegation in furtherance of justice is statutory. Because the power is statutory, the Legislature may eliminate it. (*People* v. *Thomas, supra*, 4 Cal.4th at pp. 210-211; *People* v. *Valencia, supra*, 207 Cal.App.3d at p. 1045.) To do so, the Legislature need not expressly refer to section 1385. (*People* v. *Thomas, supra*, 4 Cal.4th at p. 211.) This does not mean, however, that any statute defining the punishment for a crime can be read as implicitly eliminating the court's power to impose a lesser punishment by dismissing, or by striking sentencing allegations, under section 1385. This is because the statutory power to dismiss in furtherance of justice has always coexisted with statutes defining punishment and must be reconciled with the latter. (See Stats. 1850, ch. 119, § 629, p. 323.) For this reason, we will not interpret a statute as eliminating courts' power under section 1385 "absent a clear legislative direction to the contrary." (*People* v. *Thomas, supra*, 4 Cal.4th at p. 210; see also *People* v. *Rodriguez* (1986) 42 Cal.3d 1005, 1019 [232 Cal.Rptr. 132, 728 P.2d 202] [section 1385 is inapplicable in the face of a "more specific proscription on the court's power"]; *People* v. *Fritz* (1985) 40 Cal.3d 227, 230 [219 Cal.Rptr. 460, 707 P.2d 833] [requiring "clear language eliminating a trial court's section 1385 authority whenever such elimination is intended"]; *People* v. *Williams* (1981) 30 Cal.3d 470, 482 [179 Cal.Rptr. 443, 637 P.2d 1029] ["Section 1385 permits dismissals in the interest of justice in any situation where the Legislature has not clearly evidenced a contrary intent."].)

■ We thus arrive at this question: Does the Three Strikes law contain a "clear legislative direction" that courts may not strike sentencing allegations in furtherance of justice under section 1385 without the prosecutor's approval? The need for a *clear direction*, as demanded by the cases cited in

of justice under section 1385, subdivision (a), whether on its own motion or upon motion of the prosecution." The argument depends on the assumption that the language of section 1385(b) does bar a court from striking prior felony conviction allegations sua sponte in Three Strikes cases. The assumption, as will be seen, is erroneous.

the preceding paragraph, is increased in this instance by the grave constitutional questions that would follow from the recognition of a prosecutorial veto power.

As an initial matter we may quickly reject the argument, which various amici curiae mention but do not seriously urge, that the Three Strikes law permits a court to dismiss a prior felony allegation *only* when there is insufficient evidence. To read the last sentence of section 667(f)(2)[9] in this simplistic fashion renders meaningless the preceding sentence's declaration that "[t]he prosecuting attorney may move to dismiss or strike a prior felony conviction allegation in the furtherance of justice pursuant to Section 1385 . . . ." No rational drafter would give the prosecutor express permission to bring a motion the court may not grant.

We may, then, accept as self-evident that the Legislature assumed a court would at least have the power to grant the prosecutor's motion to strike a prior felony allegation in the furtherance of justice. The question then becomes: Does the court also have the power to strike such an allegation on its own motion? If so, the power must be granted in a statute, either expressly or by implication. This is because, as already discussed, the court has no such extra-statutory power.

Defendant locates the grant of power squarely in section 1385. The Legislature, he argues, granted the power in that section and did not take it away in the Three Strikes law. Indeed, defendant contends, the Three Strikes law confirms that the court retains its powers under section 1385: Because section 667(f)(2) permits the prosecuting attorney to "move to dismiss or strike a prior felony conviction allegation in the furtherance of justice *pursuant to Section 1385*" (italics added), a fortiori the court must have power to grant the motion *pursuant to section 1385*. The Legislature's reference to section 1385 is best and most simply read as indicating that the section still is in full force and effect. That being the case, defendant concludes, in Three Strikes cases, as in other cases, the trial judge may dismiss a prior felony conviction allegation not just on the prosecutor's motion, but also on "his or her own motion," as section 1385 expressly provides.

The district attorney, in opposition, argues that one need not look to section 1385 to find the court's authority to grant the prosecutor's motion to strike. Instead, the court's power to grant the prosecutor's motion is implicit in the language of section 667(f)(2) authorizing the prosecutor to make the

---

[9]"If upon the satisfaction of the court that there is insufficient evidence to prove the prior felony conviction, the court may dismiss or strike the allegation." (§ 667(f)(2).)

motion. Under this interpretation, section 667(f)(2)'s reference to section 1385 is surplusage, or perhaps merely intended to illustrate what is meant by a dismissal "in the furtherance of justice."

The district attorney's argument is not persuasive. Section 667(f)(2) says in so many words that the prosecutor may move to dismiss prior felony allegations *"pursuant to* Section 1385" (italics added) and not *as if* pursuant to the section. The words used clearly indicate the Legislature proceeded from the assumption that section 1385 remained in effect in Three Strikes cases. If the Legislature had wanted to authorize a motion to dismiss in furtherance of justice without invoking section 1385, it could easily have done so simply by deleting the words "pursuant to Section 1385."

Indeed, the Legislature considered doing just that. A few days before passing the final version of Assembly Bill No. 971, the Senate rejected language that would have removed the reference to section 1385 from section 667(f)(2) and declared that the court might strike prior felony allegations "only" on the prosecutor's motion. Had the amendment been adopted, section 667(f)(2) would have provided as follows: "The court may dismiss or strike a prior felony conviction allegation only upon motion of the prosecuting attorney made on the ground that there is insufficient evidence to prove the prior felony conviction or in the furtherance of justice." (Sen. Floor Amend. RN 9406668 to Assem. Bill No. 971 (1993-1994 Reg. Sess.) Mar. 2, 1994.) That the amendment was not adopted makes it difficult to view the final wording of section 667(f)(2), including the reference to section 1385, as anything but a purposeful choice.

Nor is it likely that the phrase, "pursuant to section 1385," was intended merely to illustrate what was meant by a dismissal in furtherance of justice without implicitly confirming the court's power to act under that section. In view of the long history in this state of dismissals in furtherance of justice, which have been authorized since 1850 (Stats. 1850, ch. 119, § 630, p. 323) and discussed prominently in case law (e.g., *People* v. *Burke, supra,* 47 Cal.2d 45; *People* v. *Sidener, supra,* 58 Cal.2d 645; *People* v. *Tenorio, supra,* 3 Cal.3d 89; *People* v. *Tanner, supra,* 24 Cal.3d 514; *People* v. *Fritz, supra,* 40 Cal.3d 227; *People* v. *Williams, supra,* 30 Cal.3d 470), there is no realistic chance the concept of a dismissal in furtherance of justice would have been misunderstood absent an illustrative reference to a section giving the court a power the Legislature supposedly wished to nullify.

The opinions cited in the preceding paragraph are some of the most controversial this court has ever written. At issue in each was whether a trial court had power to strike, in furtherance of justice under section 1385,

particular allegations relevant to sentencing. In view of the section's prominent and contentious history, the argument that the Legislature might authorize a motion to be made *"pursuant to section 1385"* (§ 667(f)(2), italics added; § 1170.12, subd. (d)(2)), without also intending for courts to retain their powers under the section, is difficult to accept.

A brief review of the history of section 1385 in the decisions of this court will emphasize the point. Some of the relevant decisions have already been mentioned. In *People* v. *Burke, supra,* 47 Cal.2d 45, a 1956 decision, the court unanimously held that section 1385 gave a trial court the power to strike sentencing allegations in furtherance of justice. In *People* v. *Sidener, supra,* 58 Cal.2d 645, decided in 1962, the court upheld, by a vote of four to three, a statute forbidding trial courts to strike prior-narcotics-offense allegations in narcotics cases under section 1385 except on the prosecutor's motion. Eight years later, in *People* v. *Tenorio, supra,* 3 Cal.3d 89, the court unanimously overruled *Sidener* and declared unconstitutional, as a violation of separation of powers, the statute purporting to give the prosecutor the power to veto dismissals in narcotics cases. In doing so, as already noted, the court largely incorporated Justice Schauer's dissenting opinion in *Sidener*. The unanimous court in *Tenorio* included two of the justices who had signed the majority opinion in *Sidener*.

Controversy over the application of section 1385 continued. In *People* v. *Tanner,* the court had originally decided that trial judges acting under section 1385 could strike certain firearm-use allegations (§ 1203.06) in furtherance of justice. The court subsequently granted rehearing and reached the opposite conclusion. (*People* v. *Tanner, supra,* 24 Cal.3d 514, 521.) In *People* v. *Williams, supra,* 30 Cal.3d 470, a 1981 opinion, the court held that a trial court acting under section 1385 could strike special circumstance allegations in capital cases (see § 190.2) in furtherance of justice. The electorate subsequently limited that power, while not altogether abolishing it, with an initiative statute that bars a court from striking a special circumstance allegation after it has been admitted or found to be true. (§ 1385.1, added by initiative, Gen. Elec. (June 5, 1990) [Proposition 115]; see *Tapia* v. *Superior Court* (1991) 53 Cal.3d 282, 298, fn. 17 [279 Cal.Rptr. 592, 807 P.2d 434].) Finally, in *People* v. *Fritz, supra,* 40 Cal.3d 227, a 1985 decision, the court held that a trial judge could strike in furtherance of justice, under section 1385, prior serious felony conviction allegations made under section 667, subdivision (a), which mandates a five-year enhancement for each such conviction. The Legislature responded by adding section 1385(b), which expressly withdrew the court's power to strike such allegations. (Stats. 1986, ch. 85, § 2, p. 211.)

As the foregoing discussion illustrates, there is a long history of dispute among the various branches of state government over the application of

section 1385 to sentencing allegations. This history makes it unlikely in the extreme that legislators, or other drafters, would expressly authorize motions to be made *"pursuant to section 1385"* (§ 667(f)(2), italics added; § 1170.12, subd. (d)(2)) unless their intent was to confirm that courts would retain their power to act pursuant to the section. The lesson of section 1385's controversial history is that references to the section in sentencing statutes are not lightly or thoughtlessly made. The drafter's express invocation of section 1385 in the Three Strikes law, together with the absence of any language purporting to bar courts from acting pursuant to it, virtually compels the conclusion no such prohibition was intended.

■ The Attorney General, appearing as amicus curiae, endorses the district attorney's position that section 667(f)(2) eliminates the court's power to strike prior felony conviction allegations sua sponte under section 1385. The Attorney General, however, argues the point somewhat differently: He applies the maxim *expressio unius est exclusio alterius*.

"We believe," the Attorney General writes, "the plain meaning [of section 667(f)(2)] is that a prosecutor has power under the statute to move to strike a prior felony conviction for two separate reasons, either (1) in the furtherance of justice, or (2) for insufficient evidence. The contrast is stark between that provision and the provision regarding the trial court, which provides that the trial court can strike the prior only for insufficient evidence. If this common sense plain interpretation needs Latin support, the principle 'expressio unius est exclusio alterius' provides that the expression of the trial court's power to strike solely for insufficient evidence plainly implies an exclusion of that court's power to strike in furtherance of justice. That common sense interpretation is only strengthened by the contrast between the statement of the trial court's power, with its single ground, and the statement in the same paragraph of the prosecutor's power, with its two grounds."

The argument is not persuasive. The Attorney General contends, in essence, that section 667(f)(2) exhaustively enumerates the court's powers on the subject of striking prior felony allegations. Yet, while acknowledging the court has the power to grant the prosecutor's motion to strike in furtherance of justice, the Attorney General cannot point to any language in the statute enumerating that power. Because of this omission from the statute, to view it as an exhaustive enumeration of the court's powers on the subject of striking allegations is impossible. Nor is there any need to view the statute as an exhaustive enumeration or to look therein for permission to grant the prosecutor's motion; the section, as already discussed, expressly refers to section 1385 and declares that the prosecutor's motion is made "pursuant to" that section.

More importantly, the enumeration of powers in section 667(f)(2), read in context, has a purpose the Attorney General does not consider. The immediately preceding subdivision purports to eliminate the prosecutor's charging discretion in Three Strikes cases, with these words: "The prosecuting attorney shall plead and prove each prior felony conviction except as provided in paragraph (2)." (§ 667(f)(1), italics added; see also § 1170.12, subd. (d)(1) [same].) This language ("shall plead and prove") would seem to bar the prosecutor from moving to strike prior felony conviction allegations, in the absence of the additional language in paragraph (2) expressly authorizing such a motion. Thus, on its face, paragraph (2) purports to be *an exception* to the prosecutor's duty to prove all prior felony convictions, rather than a limitation on the court's discretion to strike. In other words, section 667(f) first purports to remove the prosecutor's charging discretion completely, and then purports to replace that discretion with permission to file a motion to strike "pursuant to section 1385," which the court may or may not grant.[10]

The theme of subjecting certain prosecutorial decisions to judicial oversight continues in the next sentence of section 667(f)(2): "If upon the satisfaction of the court that there is insufficient evidence to prove the prior felony conviction, the court may dismiss or strike the allegation." The evident purpose of this language is to require the court, before granting the prosecutor's motion to strike for insufficient evidence, to satisfy itself that the evidence truly is insufficient. There was no need to include language empowering the court to dismiss, on its own motion, factually unsupported allegations. A statute cannot constitutionally force a court to impose criminal sanctions based on insufficient evidence. (See *Jackson* v. *Virginia* (1979) 443 U.S. 307, 313-316 [61 L.Ed.2d 560, 569-572, 99 S.Ct. 2781]; cf. *In re Winship* (1970) 397 U.S. 358, 361-364 [25 L.Ed.2d 368, 373-375, 90 S.Ct. 1068].)

Next, the district attorney argues the Legislature forbade the court to act under section 1385 in Three Strikes cases with the first sentence of section 667(f)(1). The sentence declares: "*Notwithstanding any other law*, subdivisions (b) to (i), inclusive, shall be applied in every case in which a defendant has a prior felony conviction as defined in subdivision (d)." (Italics added; see also § 1170.12, subd. (d)(1) [same].) This sentence means, the district attorney contends, that *the sentences* mandated in the Three Strikes law (§ 667, subds. (b)-(i)) shall be applied "[n]otwithstanding any other law." In other words, a court may not employ its powers under section 1385 to reduce a defendant's sentence.

This is not, however, what the quoted sentence says. It says, rather, that "*subdivisions (b) to (i)*" of section 667—namely the *entire* Three Strikes

---

[10]See *ante*, page 515, footnote 7.

law—"*shall be applied* in every case in which a defendant has a prior felony conviction . . . ." (§ 667(f)(1), italics added.) Section 667(f)(2), which courts are to apply "[n]otwithstanding any other law," expressly authorizes the prosecutor to move to strike prior felony convictions *pursuant to Section 1385*." Thus, the command of the Three Strikes law—that it shall be applied "[n]otwithstanding any other law"—cannot literally be followed without reference to and, if appropriate, action "pursuant to," section 1385.

A simpler reading of the language in question ("[n]otwithstanding any other law") that more likely describes its probable intent is this: The Three Strikes law, when applicable, takes the place of whatever law would otherwise determine defendant's sentence for the current offense. The language thus eliminates potential conflicts between alternative sentencing schemes.

The phrase "[n]otwithstanding any other law" can also be found at the beginning of subdivisions (c) and (d) of section 667. The former subdivision addresses sentencing, and the latter defines "prior conviction of a felony." Neither subdivision imposes a command that is necessarily inconsistent with the court's power to strike under section 1385.[11]

The district attorney finds an implicit prohibition on the striking of prior felony allegations in section 667, subdivision (c)(2), which provides as

---

[11]It has also been argued that the introductory language of section 667, subdivision (c), bars a court from striking a prior felony conviction allegation after it has been pled and proved. The subdivision begins: "Notwithstanding any other law, if a defendant has been convicted of a felony and it has been pled and proved that the defendant has one or more prior felony convictions as defined in subdivision (d), the court shall adhere to each of the following: . . . ." (§ 667, subd. (c).) Immediately following this introductory language is an enumeration of sentencing consequences.

The argument is not persuasive. The very purpose of striking a sentencing allegation under section 1385 is to effectuate the decision that " 'in the interest of justice' defendant should not be required to undergo a statutorily increased penalty which would follow from judicial determination of that fact." (*People* v. *Burke, supra,* 47 Cal.2d at p. 50.) The Three Strikes law, itself, expressly approves the striking of prior felony conviction allegations (§ 667(f)(2)), presumably for the purpose of affecting sentencing, since the striking of such allegations has no other purpose. Moreover, it is well established that a court may exercise its power to strike under section 1385 "before, during or after trial," up to the time judgment is pronounced. (*People* v. *Orin* (1975) 13 Cal.3d 937, 945 [120 Cal.Rptr. 65, 533 P.2d 193]; *People* v. *Superior Court (Howard)* (1968) 69 Cal.2d 491, 505 [72 Cal.Rptr. 330, 446 P.2d 138]; see 5 Witkin & Epstein, Cal. Criminal Law (2d ed. 1989) Trial, §§ 2546, 2547, pp. 3055-3056.) We do not find in the language of section 667, subdivision (c), a "clear legislative direction to the contrary." (*People* v. *Thomas, supra,* 4 Cal.4th at p. 210; see also *People* v. *Rodriguez, supra,* 42 Cal.3d at p. 1019; *People* v. *Fritz, supra,* 40 Cal.3d at pp. 229-230; *People* v. *Williams, supra,* 30 Cal.3d at p. 482.) Indeed, to strike a sentencing allegation after trial may in some cases be preferable to striking before trial, because the court after trial has heard the evidence relevant to the defendant's culpability and, thus, is better prepared to decide whether the interests of justice make it advisable to exercise the power to strike under section 1385.

follows: "Probation for the current offense shall not be granted, *nor shall execution or imposition of the sentence be suspended for any prior offense.*" (Italics added.) The district attorney reads this language ("prior offense") as referring to prior felony conviction allegations. "The only authorized procedure," he argues, "for not imposing sentence on a prior conviction at the time of sentencing is to strike the prior." Thus, he concludes, section 667, subdivision (c)(2), independently bars a court from acting under section 1385, because the former operates "[n]otwithstanding any other law . . . ." (§ 667, subd. (c) [first paragraph].)

To construe the words "*prior offense*" in section 667, subdivision (c)(2), (italics added) as meaning prior felony *convictions* makes no sense in context. Throughout the Three Strikes law, when the Legislature intended to refer to a previous *conviction* of an offense, as it did in many instances, it properly used the word "conviction." (§ 667, subds. (d), (d)(1), (d)(2), (d)(3), (e), (e)(1), (e)(2), (f)(1), (f)(2), (g).) Furthermore, the court does not "impos[e] . . . sentence" for a prior conviction; instead, a prior conviction lengthens the sentence for the *current offense.* Thus, the language of section 667, subdivision (c)(2) literally applies only to a defendant who has not yet been sentenced for an offense at the time he is sentenced under the Three Strikes law. This might be the case, for example, when a defendant committed the felony subject to the Three Strikes law while on probation for a prior offense. The apparent purpose of section 667, subdivision (c)(2), is to ensure that such a defendant will be sentenced on all pending charges.

■ The district attorney next argues that section 1385(b) independently bars a court from striking prior felony allegations in Three Strikes cases, regardless of the language of the Three Strikes law. Section 1385(b) has already been mentioned. It qualifies the general power to dismiss granted to courts in section 1385(a), in these words: "This section does not authorize a judge to strike any prior conviction of a serious felony for purposes of enhancement of a sentence under Section 667." (§ 1385(b).) The Three Strikes law, the district attorney contends, was codified as part of section 667 and articulates a sentence "enhancement" within the meaning of section 1385(b). Thus, he concludes, section 1385(b) expressly bars a court from acting pursuant to section 1385(a) in Three Strikes cases.

Defendant makes three arguments in opposition to the district attorney's construction of section 1385. As will appear, we need not finally resolve them in order to reject the district attorney's construction.

Defendant's first argument is that section 1385(b) cannot fairly be read as referring to the Three Strikes law. In 1986, when section 1385(b) was added

to the Penal Code, section 667 did not contain the Three Strikes law. Instead, former section 667 (now section 667, subdivision (a)) contained only the provisions mandating five-year enhancements for prior serious felonies. The Legislature enacted section 1385(b) later, after the court in *People* v. *Fritz, supra*, 40 Cal.3d 227, construed section 667 as not precluding a court from acting under section 1385 to strike prior serious felony conviction allegations. Section 1385(b) was enacted by the Legislature "expressly for the purpose of abrogating *People* v. *Fritz.*" (*People* v. *Valencia, supra*, 207 Cal.App.3d 1042, 1045.) When a statute such as section 1385(b) refers to the provisions of another statute such as section 667, defendant argues, "such provisions are incorporated in the form in which they exist at the time of the reference and not as subsequently modified . . . ." (*Palermo* v. *Stockton Theatres, Inc.* (1948) 32 Cal.2d 53, 58-59 [195 P.2d 1].) Consequently, defendant concludes, section 1385(b) refers to section 667 as it existed at the time section 1385(b) was enacted, and not as later amended by the Three Strikes law.

Defendant's second argument is that, even if section 1385(b) were construed as referring to the legislative version of the Three Strikes law incorporated in section 667, it does not matter, because the only valid Three Strikes law is the initiative version contained in section 1170.12. The initiative version, which was enacted after the legislative version, implicitly repeals the earlier version appearing in section 667. Defendant relies on the rule that, "where two statutes deal with the same subject matter, the more recent enactment prevails as the latest expression of the legislative will." (2B Sutherland, Statutory Construction (5th ed. 1992) § 51.02, p. 122, fn. omitted; see *City of Petaluma* v. *Pac. Tel. & Tel. Co.* (1955) 44 Cal.2d 284, 288 [282 P.2d 43]; *Stafford* v. *L. A. etc. Retirement Board* (1954) 42 Cal.2d 795, 798 [270 P.2d 12].) Defendant concludes: If the initiative version of the Three Strikes law, by superseding the legislative version with a statute (§ 1170.12) to which section 1385(b) does not refer, restored the court's discretion to strike prior felony conviction allegations in furtherance of justice, then that ameliorative change in the law applies retroactively to his benefit. (See *In re Estrada* (1965) 63 Cal.2d 740, 742-748 [48 Cal.Rptr. 172, 408 P.2d 948].)[12]

Defendant's third argument takes issue with the district attorney's reading of the term "enhancement," as used in section 1385(b). The section, as mentioned, withdraws permission "to strike any prior conviction of a serious felony for purposes of enhancement of a sentence under Section 667." The term "enhancement," defendant contends, has acquired the technical meaning under the state's Determinate Sentencing Act of "an additional term of

---

[12]See *ante*, page 505, footnote 2.

imprisonment added to the base term." (See Cal. Rules of Court, rule 405(c); see also *People* v. *Bright* (1996) 12 Cal.4th 652, 656, fn. 2 [49 Cal.Rptr.2d 732, 909 P.2d 1354].) The Three Strikes law, like the older "Habitual Offender Law" (§ 667.7) construed in *People* v. *Jenkins* (1995) 10 Cal.4th 234 [40 Cal.Rptr.2d 903, 893 P.2d 1224], articulates an alternative sentencing scheme for the current offense rather than an enhancement. (See *id.* at p. 254 ["Neither section 667.7, nor an indeterminate life term imposed under that section, involves a sentence enhancement."]; see also *People* v. *Bright*, *supra*, 12 Cal.4th at p. 656, fn. 2 [section 664, which increases punishment for attempted, premeditated murders, "strictly speaking . . . does not constitute an 'enhancement' within the meaning of rule 405(c)"].)

On this single point, the Attorney General appears to agree more with the defendant than with the district attorney. "We have," the Attorney General writes, "previously made plain our belief that the three strikes statute is not an 'enhancement'. This precept, for purposes of the extremely similar section 667.7 has been accepted by this Court in *People* v. *Jenkins*[, *supra*, 10 Cal.4th 234]. As such, we believe that the argument that section 1385(b) applies to bar the trial court from striking 'strikes' under section 667, subdivisions (b) through (i) is somewhat strained."

As the Attorney General suggests, one cannot reasonably assign much weight to the argument that section 1385(b) refers to the Three Strikes law. Nevertheless, as he also observes, "it cannot be avoided that the Legislature did place the three strikes statute, rather awkwardly, in section 667. As such, it seems that the Legislature may well have intended that the [T]hree [S]trikes statute fall within the bar of section 1385(b)."

Certainly legislative intent is the governing consideration. If one could clearly show the Legislature's purpose in placing the Three Strikes law within section 667 was to make its provisions subject to section 1385(b), then that purpose would prevail. The only basis, however, for concluding this was the Legislature's purpose is an inference that arises from the numbering of various sections of the Penal Code. Contrary inferences arise from the language of the Three Strikes law, itself ("pursuant to section 1385" [§ 667(f)(2); § 1170.12, subd. (d)(2)]), from defendant's arguments regarding the time at which section 1385(b) is deemed to speak, and from the technical meaning of the term "enhancement." Defendant's additional argument that Proposition 184 (§ 1170.12) superseded the legislative version codified in section 667 would also, if accepted, refute the district attorney's argument, regardless of the Legislature's purpose in enacting the superseded law.

It is not, however, necessary to answer all of these arguments. Concerning the Legislature's intent on this subject, two points appear to be determinative. First, for all of the reasons set out above, the Legislature's decision to

place the Three Strikes law within section 667 falls short of a "clear legislative direction" (*People* v. *Thomas, supra,* 4 Cal.4th at p. 210) to eliminate courts' power to strike prior felony allegations sua sponte. The principal reason it falls short, as previously discussed, is that the Three Strikes law expressly authorizes "[t]he prosecuting attorney [to] move to dismiss or strike a prior felony conviction allegation in the furtherance of justice *pursuant to Section 1385* . . . ." (§ 667(f)(2), italics added.) The district attorney's argument, followed to its logical conclusion, would allow the prosecutor to move to dismiss in furtherance of justice pursuant to section 1385, but deny the court power to grant the motion because of subdivision (b) of that section. To construe the law in this way would make no sense. Second, as also discussed, the Legislature declined to add proposed language that would have deleted the reference to section 1385 and, in addition, would clearly have eliminated the court's power to strike prior felony allegations in furtherance of justice sua sponte. Thus, the language in the Three Strikes law permitting action "pursuant to section 1385" (§ 667(f)(2); § 1170, subd. (d)(2)) cannot realistically be seen as inadvertent. Accordingly, we cannot conclude that the Three Strikes law discloses a "clear legislative direction" eliminating the court's power to act on its own motion pursuant to section 1385.

The district attorney sees the legislative history differently. The Three Strikes initiative was motivated, he observes, by the voters' desire for longer sentences and by a mistrust of judges. The proponents of the initiative argued in its favor that "soft-on-crime judges, politicians, defense lawyers and probation officers care more about violent felons than they do victims. They spend all of their time looking for loopholes to get rapists, child molesters and murderers out on probation, early parole, or off the hook altogether." (Ballot Pamp., rebuttal to the argument against Prop. 184, as presented to the voters, Gen. Elec. (Nov. 8, 1994) p. 37.)

Plainly the Three Strikes initiative, as well as the legislative act embodying its terms, was intended to restrict courts' discretion in sentencing repeat offenders. We may accept the ballot arguments as evidence of that intent. (E.g., *Hill* v. *National Collegiate Athletic Assn.* (1994) 7 Cal.4th 1, 16 [26 Cal.Rptr.2d 834, 865 P.2d 633].) Both versions of the Three Strikes law expressly declare that a court, in sentencing, may not grant probation, suspend execution or imposition of sentence (§ 667, subd. (c)(2); § 1170.12, subd. (a)(2)), divert the defendant, or commit the defendant to any facility other than state prison (§ 667, subd. (c)(4); § 1170.12, subd. (a)(4)). But to say the intent of a law was to restrict judicial discretion begs the question of *how* judicial discretion was to be restricted. The answer to that question can be found only by examining the language of the act. In it, one finds the express restrictions on the courts' power mentioned above, but no others.

The initiative, moreover, was *less* restrictive on the subject of striking prior felonies than the original version of Assembly Bill No. 971, on which the initiative was loosely based. On this subject the bill provided that "[t]he prosecuting attorney may move to dismiss a prior felony conviction allegation if there is insufficient evidence to prove the prior conviction. If upon the satisfaction of the court that there is insufficient evidence to prove the prior felony conviction, the court may dismiss the allegation." (Assem. Bill No. 971 (1993-1994 Reg. Sess.) as introduced Mar. 3, 1993.) The drafters of the initiative added the language permitting the prosecutor to move to strike "in the furtherance of justice" and to make the motion "pursuant to Section 1385." (§§ 1170.12, subd. (d)(2), 667(f)(2).) For this reason as well, to infer from the very general ballot arguments a more specific intention to bar courts from acting under section 1385 appears unwarranted.

Various amici curiae supporting the district attorney make one final argument regarding the probable intent of the drafters of the Three Strikes law. As already mentioned, it was in 1985, in reaction to *People* v. *Fritz, supra,* 40 Cal.3d 227, that the Legislature enacted the provision withdrawing courts' power to "strike any prior conviction of a serious felony for purposes of enhancement of a sentence under Section 667." (§ 1385(b).) Like the former section 667 (presently section 667, subdivision (a)), the Three Strikes law attaches additional penal consequences to prior serious felony convictions. It would be irrational, amici curiae suggest, to attribute to the drafters the intent to restore a power so recently withdrawn.

The argument is not sound. The drafters of the Three Strikes law could rationally have chosen to give courts more discretion under that law than under section 667, subdivision (a). Both statutory schemes address the sentencing of defendants who have previously committed serious felonies. The five-year enhancements mandated by section 667, subdivision (a), however, apply only when the defendant's current offense is a "serious felony" within the meaning of section 1192.7, subdivision (c), while the sentences mandated by the Three Strikes law apply whether or not the current felony is "serious." To give judges more discretion in sentencing under a law that is triggered by any felony, serious or not, than in sentencing under a law applicable only when the defendant's current felony is serious, is not necessarily irrational. Nor is it necessarily irrational to give judges more discretion in applying a law providing for life sentences than a law providing for five-year enhancements. Indeed, these distinctions can be defended as serving the ends of justice. In any event, to give judges this measure of discretion certainly is not so irrational as to compel us, for that reason alone, to give the statute a contrary interpretation.

For these reasons, we conclude that section 1385(a) does permit a court acting on its own motion to strike prior felony conviction allegations in cases

brought under the Three Strikes law. Our holding respects the principle that legislative acts are construed, if at all possible, to be constitutional. (See *ante*, p. 509.) ██ ██ Our holding also avoids conflict with the principle that ambiguous penal statutes are construed to favor the defendant. (*People* v. *Jones* (1988) 46 Cal.3d 585, 599 [250 Cal.Rptr. 635, 758 P.2d 1165]; *United States* v. *Bass* (1971) 404 U.S. 336, 348 [30 L.Ed.2d 488, 496-497, 92 S.Ct. 515].)[13]

 To guide the lower courts in the exercise of their discretion under section 1385(a), whether acting on their own motion or on motion of the prosecuting attorney, we emphasize the following: A court's discretion to strike prior felony conviction allegations in furtherance of justice is limited. Its exercise must proceed in strict compliance with section 1385(a), and is subject to review for abuse. We reviewed the applicable principles in *People* v. *Orin, supra*, 13 Cal.3d 937.

"The trial court's power to dismiss an action under section 1385, while broad, is by no means absolute. Rather, it is limited by the amorphous concept which requires that the dismissal be 'in furtherance of justice.' As the Legislature has provided no statutory definition of this expression, appellate courts have been faced with the task of establishing the boundaries of the judicial power conferred by the statute as cases have arisen challenging its exercise. Thus, in measuring the propriety of the court's action in the instant case, we are guided by a large body of useful precedent which gives form to the above concept.

"From the case law, several general principles emerge. Paramount among them is the rule 'that the language of [section 1385], "in furtherance of justice," requires consideration both of the constitutional rights of the defendant, and *the interests of society represented by the People*, in determining whether there should be a dismissal. [Citations.]' [Citations.] At the very least, the reason for dismissal must be 'that which would motivate a

---

[13]Our holding, which relates only to sentencing, is fully retroactive. (See *People* v. *Belmontes* (1983) 34 Cal.3d 335, 348, fn. 8 [193 Cal.Rptr. 882, 667 P.2d 686]; *People* v. *Tenorio, supra*, 3 Cal.3d at p. 95, fn. 2.) A defendant serving a sentence under the Three Strikes law (§§ 667, subds. (b)-(i), 1170.12) imposed by a court that misunderstood the scope of its discretion to strike prior felony conviction allegations in furtherance of justice pursuant to section 1385(a), may raise the issue on appeal, or, if relief on appeal is no longer available, may file a petition for habeas corpus to secure reconsideration of the sentence. Such a petition should be filed in the sentencing court. (*People* v. *Tenorio, supra*, 3 Cal.3d at p. 95, fn. 2.) Such a petition may be summarily denied if the record shows that the sentencing court was aware that it possessed the discretion to strike prior felony conviction allegations without the concurrence of the prosecuting attorney and did not strike the allegations, or if the record shows that the sentencing court clearly indicated that it would not, in any event, have exercised its discretion to strike the allegations. (*People* v. *Belmontes, supra*, 34 Cal.3d at p. 348, fn. 8.)

reasonable judge.' [Citations.]" (*People* v. *Orin*, *supra*, 13 Cal.3d at p. 945.) "Courts have recognized that society, represented by the People, has a legitimate interest in 'the fair prosecution of crimes properly alleged.' [Citation.] ' "[A] dismissal which arbitrarily cuts those rights without a showing of detriment to the defendant is an abuse of discretion." [Citations.]' " (*Id.* at p. 947.)

From these general principles it follows that a court abuses its discretion if it dismisses a case, or strikes a sentencing allegation, solely "to accommodate judicial convenience or because of court congestion." (*People* v. *Kessel* (1976) 61 Cal.App.3d 322, 326 [132 Cal.Rptr. 126].) A court also abuses its discretion by dismissing a case, or a sentencing allegation, simply because a defendant pleads guilty. (*People* v. *Orin*, *supra*, 13 Cal.3d at p. 949.) Nor would a court act properly if "guided solely by a personal antipathy for the effect that the three strikes law would have on [a] defendant," while ignoring "defendant's background," "the nature of his present offenses," and other "individualized considerations." (*People* v. *Dent* (1995) 38 Cal.App.4th 1726, 1731 [45 Cal.Rptr.2d 746].)

A court's discretionary decision to dismiss or to strike a sentencing allegation under section 1385 is also reviewable. "[W]here the court's action lacks reason it may be invalidated upon timely challenge." (*People* v. *Orin*, *supra*, 13 Cal.3d at p. 949.) Section 1385 anticipates, and facilitates, appellate review with the requirement that "[t]he reasons for the dismissal must be set forth in an order entered upon the minutes." (§ 1385(a).) "The statement of reasons is not merely directory, and neither trial nor appellate courts have authority to disregard the requirement. It is not enough that on review the reporter's transcript may show the trial court's motivation; the *minutes* must reflect the reason 'so that all may know why this great power was exercised.' " (*People* v. *Beasley* (1970) 5 Cal.App.3d 617, 637 [85 Cal.Rptr. 501]; see also *People* v. *Orin*, *supra*, 13 Cal.3d at p. 944 ["It is settled law that this provision is mandatory and not merely directory."].)

■■■ Having decided that section 1385(a) applies to this case, we must determine the appropriate disposition. The district attorney argued in the Court of Appeal that the trial court abused its discretion by striking the prior felony conviction allegation and by participating in an illegal plea bargain. The Court of Appeal did not reach these issues because it held, contrary to our decision today, that section 1385 did not apply in a case brought under the Three Strikes law. Under these circumstances we would ordinarily remand the case to the Court of Appeal to resolve the remaining issues.

To ask the Court of Appeal to consider the remaining claims is not appropriate in this instance, however, because the record does not contain all

of the material a reviewing court should consider in deciding whether the trial court properly exercised its discretion. This is because the trial court did not set forth its reasons for striking the prior felony conviction allegations in the relevant minute order, as required by section 1385(a). The order contains only this explanation of the court's decision: "Court finds [Penal Code section 667] is unconstitutional and violates separation of powers and strikes the [prior felony conviction] allegation[s]." This statement explains why the court found section 1385 applicable, but does not explain "the reasons for the dismissal" (§ 1385(a)), that is, why the court felt it was proper to exercise its discretion under the section to strike the prior felony conviction allegations in this particular case. Under settled law such an order is ineffective. (*People* v. *Orin*, *supra*, 13 Cal.3d at p. 944 [" '[I]f the reasons are not set forth in the minutes, the order dismissing may not be considered a dismissal under section 1385.' [Citations.]"]; *People* v. *Beasley*, *supra*, 5 Cal.App.3d at p. 638, and cases cited therein.)

The conclusion that the trial court's order was ineffective necessarily affects the disposition. At the time defendant pled guilty, the trial court had indicated its willingness to consider striking the prior felony conviction allegations. This factor manifestly influenced defendant's decision to plead guilty. Under these circumstances, the appropriate remedy is to vacate the judgment, to permit defendant to withdraw his plea, and otherwise to proceed in conformity with this opinion. If, on remand, the trial court again decides to exercise its discretion to strike the prior felony conviction allegations in furtherance of justice under the standards articulated above and in the relevant case law, the court must set forth the reasons for that decision in strict compliance with section 1385(a). Any such decision will be reviewable for abuse of discretion according to the procedures generally applicable to such decisions.

## III. Disposition

The judgment of the Court of Appeal is affirmed in part and reversed in part. The cause is remanded to the Court of Appeal, which shall vacate the writ of mandate previously issued and direct the issuance of a new writ ordering the trial court to vacate the sentence, permit defendant to withdraw his plea, and to proceed thereafter in accordance with the views expressed in this opinion.

George, C. J., Mosk, J., Kennard, J., Baxter, J., and Lucas, J.,* concurred.

---

*Retired Chief Justice of the Supreme Court, assigned by the Acting Chief Justice pursuant to article VI, section 6 of the California Constitution.

**CHIN, J.,** Concurring.—I agree that because the "three strikes" statute does not contain "a clear legislative direction to the contrary" (*People* v. *Thomas* (1992) 4 Cal.4th 206, 210 [14 Cal.Rptr.2d 174, 841 P.2d 159]), the trial court retains discretion under Penal Code section 1385 to dismiss prior felony conviction allegations.

I write separately to disassociate myself from the lengthy discussion whether this statute would violate the separation of powers doctrine if, contrary to our interpretation, it did remove discretion from the trial court. Relying on *People* v. *Tenorio* (1970) 3 Cal.3d 89 [89 Cal.Rptr. 249, 473 P.2d 993] and its progeny, the majority effectively decides that such a statute would violate the separation of powers. The majority's statutory interpretation stands on its own and renders the constitutional analysis unnecessary. Moreover, because the statute the majority considers is quite different from that confronted in *Tenorio*, that analysis is questionable.

The statute the majority suggests would be unconstitutional, if it existed, would apparently provide the following: The prosecution has no charging discretion but must charge all priors for which there is sufficient evidence. Thereafter, if *both* the prosecution and the court concur, the prior may be dismissed. Neither the court nor the prosecution could unilaterally decide not to charge or to dismiss the prior. In effect, as the Attorney General argues, the statute would act as a "sunshine" statute, requiring that the decision either not to prosecute or to dismiss a prior be made in open court with reasons stated.

As the majority recognizes, a statute giving the prosecution unlimited charging discretion at the outset and giving the court no power to dismiss charged priors for which there was sufficient evidence would pass constitutional muster. (Maj. opn., *ante*, at pp. 513-514, 516-517; see *People* v. *Thomas, supra*, 4 Cal.4th 206; *Davis* v. *Municipal Court* (1988) 46 Cal.3d 64, 82 [249 Cal.Rptr. 300, 757 P.2d 11].) It is also clear that a statute giving the prosecution unreviewable discretion at the outset and giving the court authority to dismiss a charged prior but conditioning that authority on prosecutorial approval would *not* be constitutional. (*People* v. *Tenorio, supra*, 3 Cal.3d 89.) The statute the majority considers would be neither of these, but somewhere in between; neither branch could exercise discretion without the other, or, stated slightly differently, a prior conviction for which sufficient evidence existed would have to be prosecuted unless *both* branches of government agreed otherwise. Rather than only the executive branch's having a veto over the judicial, as in *Tenorio, both* branches would have an equal veto over each other. This would be a check and balance arguably similar to other checks and balances in our system of government.

This statute would differ from that declared invalid in *Tenorio* in two respects: (1) it would give the two branches of government *equal* authority, and (2) it would not give the prosecution unreviewable charging discretion. *Tenorio* suggests these differences might be critical. It states that the concept of separation of powers "demands that the branches of government be coequal . . . ." (*People* v. *Tenorio, supra,* 3 Cal.3d at p. 95.) It also stresses that the statute at issue there gave the prosecution discretion that is "unreviewable, and may therefore be exercised in a totally arbitrary fashion . . . ." (*Ibid.*) As the Court of Appeal in this case (per Huffman, J.) pointed out in rejecting the separation-of-powers argument, "The severely limited prosecutorial discretion in charging and negotiating presented by the overall 'three strikes' statutory scheme hardly equates to the 'unreviewable' and 'arbitrary' discretion vested in the prosecution which was criticized in [*People* v.] *Tenorio, supra,* 3 Cal.3d at page 95. Rather, the statutory scheme represents tight legislative control of a prosecutor sharply curtailing the prosecution's previous discretion in carrying out its traditional charging function."

The majority states, "there is grave doubt whether the statute before us could be construed as the district attorney would construe it without overruling *Tenorio* . . . ." (Maj. opn., *ante,* at p. 517.) On the contrary, because of the differences in the statutory schemes, *Tenorio* can be, and, if the issue ever arose, perhaps should be, distinguished. It may or may not be appropriate to extend *Tenorio* to the statute the majority considers, but it would indeed be an extension. The answer to the constitutional question is not easy; it should not be decided in a vacuum. The majority's statutory analysis suffices to decide this case. We should not also give an advisory opinion on a statute that does not exist and may never be enacted.

I therefore concur in the disposition and all of the majority opinion except the constitutional discussion.

Petitioner's application for a rehearing was denied August 21, 1996, and the opinion was modified to read as printed above.