Filed 4/26/13  P. v. Rey CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>REYNALDO REY,<br><br>    Defendant and Appellant. | F063860<br><br>(Super. Ct. No. F11901553)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County.  John F. Vogt, Judge.

Sylvia Whatley Beckham, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Catherine Chatman and Barton Bowers, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Reynaldo Rey was sentenced to a third strike (Pen. Code, § 667, subds. (b)-(i))[1] term of 29 years to life after a jury convicted him of three felonies and found true the allegation that he had served four prior prison terms within the meaning of section 667.5, subdivision (b). Rey argues the trial court erred in instructing the jury, abused its discretion in failing to grant relief from the three strikes sentence pursuant to *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497, 504 (*Romero*), and erred in failing to apply section 654 to stay the sentence on one of his convictions. We disagree and affirm the judgment.

## FACTUAL AND PROCEDURAL SUMMARY

### *The Evidence*

Benjamin Dias was at home when he heard the sound of the motor of his vehicle running. He looked out the window and saw a young man in his vehicle. As Dias approached the vehicle, the man drove away. Rey was not the person who stole the vehicle. Dias did not know Rey and never gave Rey permission to drive the vehicle.

Fresno Police Officer Daniel Vandersluis was patrolling with Officer Justin Baroni on the night in question. They were in full uniform and driving a marked police vehicle. At approximately 2:30 a.m., Vandersluis observed a Honda Accord being driven on a public street. Since there had been numerous thefts of Hondas in the area, the officers checked the records to see if the vehicle had been reported stolen. The officers learned the vehicle had been stolen. The vehicle then sped off as if fleeing from the officers. Vandersluis turned on the vehicle's siren and the red and blue lights and chased the vehicle. While Vandersluis could not estimate the speed of the vehicle, it was an unsafe speed for the area. Both vehicles proceeded through several stop signs without stopping. Finally the Accord approached a T-intersection, failed to slow sufficiently, and crashed into the gate that was in front of the building on the other side of the intersection.

---

[1]All further statutory references are to the Penal Code unless otherwise stated.

2.

The sole occupant of the Accord, Rey, exited the vehicle and began running. Vandersluis stopped his vehicle and began pursuit. Vandersluis yelled at Rey to stop and identified himself as a police officer. Rey continued to run and repeatedly reached for his waistband while fleeing. Vandersluis ordered him to show his hands. Rey looked over his shoulder at Vandersluis. Rey continued to run and refused to show his hands. Vandersluis shot Rey with his Taser as they entered a dark alley. Vandersluis decided to use the Taser because (1) he was closing the gap between Rey and himself and knew he was going to catch him; (2) they were entering a dark alley; (3) Rey was taller than both Vandersluis and Baroni; (4) Rey kept reaching for his waistband where suspects typically keep weapons; and (5) Vandersluis did not want to get into a physical confrontation in a dark alley that would place in danger both his life and Baroni's life.

Rey fell forward when the darts from the Taser struck him. Vandersluis and Baroni attempted to put handcuffs on Rey. Rey began kicking and swinging his arms. Vandersluis was kicked in the leg and struck twice on his face by Rey. Vandersluis cycled the Taser a second time, ending Rey's resistance.

Baroni's testimony about the events leading to Rey's arrest was consistent with Vandersluis's testimony. After Rey was placed in handcuffs, he was transported by ambulance to the hospital for medical clearance. Baroni accompanied Rey to the hospital in the ambulance. After Rey was cleared medically, he was taken to police headquarters where he gave a statement. Rey admitted he had contacted Vincent Mallory, who was known in the neighborhood to steal vehicles, and arranged to borrow a vehicle. Rey did not ask any questions when he met Mallory, but Rey thought the vehicle probably was stolen. Rey said he became scared when the officers pulled behind him, so he drove off. Rey admitted he saw the red and blue lights from the police vehicle and heard the siren. He knew he was being chased by officers from the Fresno Police Department but continued driving because he was scared and did not want to get into trouble.

3.

*The Information*

The information charged Rey with four felonies, to wit: unlawful driving of a vehicle (Veh. Code, § 10851, subd. (a)), receiving stolen property (Pen. Code, § 496d, subd. (a)), resisting an executive officer (Pen. Code, § 69), and evading a police officer with willful and wanton disregard for the safety of persons and/or property (Veh. Code, § 2800.2, subd. (a)).[2] In addition, the information alleged Rey had two prior convictions that constituted strikes within the meaning of section 667, subdivisions (b) through (i), and had served four prior prison terms within the meaning of section 667.5, subdivision (b).

*The Verdict and Sentencing*

The jury found Rey guilty as charged and in bifurcated proceedings found each of the enhancements true.

The trial court denied Rey's motion for relief pursuant to *Romero* and sentenced Rey to a third strike term on count 1 of 25 years to life and concurrent third strike terms of 25 years to life on counts 3 and 4. In addition the trial court imposed four enhancements of one year each pursuant to section 667.5, subdivision (b) for the four prior prison terms served by Rey.

## DISCUSSION

### I.  Instructional Error on Count 3 -- Resisting Arrest

The arresting officers, Vandersluis and Baroni, testified Rey ran from the stolen vehicle after he crashed into the fence. The officers gave chase and Vandersluis deployed his Taser when Rey attempted to enter a dark alley. During the chase, Rey repeatedly reached for his waistband, as if trying to locate a weapon. After he was shot with the Taser, Rey continued to resist by attempting to strike the officers, causing

---

[2]Count 2 was not submitted to the jury, although the reason it was not submitted is unclear from the record.

Vandersluis to deploy the Taser a second time. It was only at this point that Rey became compliant.

Rey's actions after he was shot with the Taser resulted in the conviction for violating section 69 in count 3. As relevant, this section criminalizes the use of force or violence to resist an officer in the performance of his duty. Rey cites "the well-established rule that when a statute makes it a crime to commit any act against a peace officer engaged in the performance of his or her duties, part of the corpus delicti of the offense is that the officer was acting lawfully at the time the offense was committed. [Citations.]" (*People v. Jenkins* (2000) 22 Cal.4th 900, 1020.) The jury must decide whether the officers acted lawfully if there is a factual dispute. (*Ibid.*)

Two cases, *People v. White* (1980) 101 Cal.App.3d 161, 167 and *People v. Olguin* (1981) 119 Cal.App.3d 39, 44-45, hold that an officer using excessive force is not acting lawfully. Rey argues there was evidence from which the jury could have concluded that Vandersluis acted unlawfully because he used excessive force when he deployed the Taser. Accordingly, Rey asserts the trial court erred in failing to instruct the jury that it must decide if Vandersluis acted lawfully.

The trial court instructed the jury on the elements of a violation of section 69 pursuant to CALCRIM No. 2652. This instruction states the elements of the offense and includes an optional portion that informs the jury that "A peace officer is not lawfully performing his or her duties if he or she is … using unreasonable or excessive force in his or her duties." Rey's counsel requested the optional portion of the instruction. The trial court refused the request, finding "there was never any evidence that the use of force was not appropriate."

""""It is settled that in criminal cases, even in the absence of a request, the trial court must instruct on the general principles of law relevant to the issues raised by the evidence. [Citations.] The general principles of law governing the case are those principles closely and openly connected with the facts before the court, and which are

necessary for the jury's understanding of the case." [Citation.]'" (*People v. Breverman* (1998) 19 Cal.4th 142, 154.) "[A] defendant has a right to have the trial court, on its own initiative, give a jury instruction on any affirmative defense for which the record contains substantial evidence [citation]—evidence sufficient for a reasonable jury to find in favor of the defendant [citation]—unless the defense is inconsistent with the defendant's theory of the case [citation]. In determining whether the evidence is sufficient to warrant a jury instruction, the trial court does not determine the credibility of the defense evidence, but only whether 'there was evidence which, if believed by the jury, was sufficient to raise a reasonable doubt ….' [Citations.]" (*People v. Salas* (2006) 37 Cal.4th 967, 982-983.)

We agree with the trial court that there was no evidence Vandersluis used unreasonable force when he arrested Rey. Vandersluis explained why he decided to deploy the Taser, and Rey did not present any expert testimony that suggested the use of the Taser was inappropriate. The jury was left with no evidence on which it could conclude that deploying the Taser was unreasonable force.

Nor do the circumstances suggest the use of the Taser was unreasonable. Rey fled in a stolen vehicle when Baroni and Vandersluis sought to stop him. He drove at unsafe speeds through a residential neighborhood. He finally lost control of the vehicle and crashed into a fence. Rey then jumped out of his vehicle and ran from the officers. He repeatedly reached for his waistband as if attempting to retrieve a weapon. He ignored orders to stop and show his hands, even though he admitted he knew he was being chased by police officers. Finally, Vandersluis deployed his Taser because Rey ran towards a dark alley and it was necessary for officer safety. Moreover, the only testimony on the issue was that use of deadly force would have been reasonable under these circumstances. If use of deadly force was reasonable, deploying a Taser also must have been reasonable. These circumstances unequivocally establish the force used was reasonable. Rey's argument thus fails.

## II.     Refusal to Strike a Prior Conviction

Rey contends the trial court erred when it refused to exercise its discretion and strike one of his prior convictions pursuant to section 1385, subdivision (a).  (*Romero, supra,* 13 Cal.4th at p. 504.)  Rey does not challenge the trial court's decision directly, but instead claims the trial court misunderstood the facts when making its decision.

The facts the trial court allegedly misunderstood revolve around prior courts granting Rey relief from a three strikes sentence pursuant to *Romero*.  Rey acknowledges that at two prior sentencing hearings, the trial court exercised its discretion and struck a prior conviction, thus allowing Rey to avoid a life sentence under the three strikes law, an assertion that the People do not contest.  Because he had received the benefit of a prior strike conviction being struck on only two occasions, Rey claims the trial court abused its discretion because "the factual findings critical to its decision find no support in the evidence."  (*People v. Cluff* (2001) 87 Cal.App.4th 991, 998.)

The following statement was made by the trial court when it explained why it was not going to exercise its discretion in this case:  "The Court has noted that *on several occasions* sentencing courts have exercised discretion and decided that it was in the interest of justice it could not impose the full sanction of the Three Strikes Law."  (Italics added.)  Rey asserts that because he was granted *Romero* relief on only two prior occasions, the trial court's statement that he had been granted *Romero* relief "on several occasions" was factually incorrect and thus resulted in an abuse of discretion.  We disagree.

The trial court made a thorough record of the reasons why it refused to grant *Romero* relief.

> "The Court has made a record of all of the input considered in the sentencing process for this morning, including a review of the prior RPO's that date back to the '80s.  The court has paid particular attention to the criminal history as set forth beginning on page 5 continuing through page 6,

7.

through page 7, three full pages of criminal conduct dating back to when the defendant was 18 years old.

> "The court has noted that on several occasions sentencing courts have exercised discretion and decided that it was in the interest of justice it could not impose the full sanction of the Three Strikes Law. At this point in time having heard the evidence, understanding that this particular case does not involve the type of conduct that registers two separate strikes, both of which are robberies, taking particular note of the numerous annual and in some cases even shorter than annual parole violations, notwithstanding the requests of the defendant personally, requests of the significant other, mother of his child, the Court cannot articulate any basis for the proper exercise of discretion to strike any of the prior strike priors."

We begin by noting that the distinction Rey seeks to make between "several occasions" and "two occasions" hardly can be considered a factual finding with no support in the evidence. But even if it were an erroneous factual finding, the difference between "several occasions" and "two occasions" is not a critical fact. The trial court explained that Rey had a long criminal record and had been granted leniency in the past, yet he continued to commit crimes. Under these facts, we are convinced that if an error occurred, and we doubt there was error, that error was harmless under any standard of review.

We also note that with the passage of Proposition 36 in November 2012, Rey may be granted relief from his three strikes sentence, potentially making this issue moot.

### III.   Section 654

The trial court imposed a third strike sentence of 25 years to life on count 1, unlawful driving of a vehicle, in violation of Vehicle Code section 10851, subdivision (a), and a concurrent third strike sentence of 25 years to life on count 4, evading a police officer with willful and wanton disregard for the safety of persons or property, in violation of Vehicle Code section 2800.2, subdivision (a). Rey asserts the trial court was required to stay the sentence on count 4 pursuant to the provisions of section 654.

"Section 654 precludes multiple punishment for a single act or omission, or an indivisible course of conduct. [Citations.]" (*People v. Deloza* (1998) 18 Cal.4th 585,

591-592.)  Imposition of concurrent sentences is incorrect if section 654 prohibits punishment for both crimes, even though there is no practical difference between the two approaches.  (*People v. Jones* (2012) 54 Cal.4th 350, 353.)  Instead, the correct approach is to stay the sentence on the count for which punishment is precluded.  (*Ibid.*)  Accordingly, the question is whether Rey's convictions in counts 1 and 4 were the result of a single act or omission or an indivisible course of conduct.

"'Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the *intent and objective* of the actor.  If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one.'  [Citation.]"  (*People v. Latimer* (1993) 5 Cal.4th 1203, 1208.)

"'It is defendant's intent and objective, not the temporal proximity of his offenses, which determine whether the transaction is indivisible.  [Citations.] … [I]f all of the offenses were merely incidental to, or were the means of accomplishing or facilitating one objective, defendant may be found to have harbored a single intent and therefore may be punished only once.  [Citation.]'  [Citation.]"  (*People v. Hicks* (1993) 6 Cal.4th 784, 789.)  "On the other hand, if the evidence discloses that a defendant entertained multiple criminal objectives which were independent of and not merely incidental to each other, the trial court may impose punishment for independent violations committed in pursuit of each objective even though the violations shared common acts or were parts of an otherwise indivisible course of conduct.  [Citations.]"  (*People v. Liu* (1996) 46 Cal.App.4th 1119, 1135.)

"The defendant's intent and objective present factual questions for the trial court, and its findings will be upheld if supported by substantial evidence.  [Citation.]"  (*People v. Andra* (2007) 156 Cal.App.4th 638, 640.)

Rey argues section 654 precludes multiple punishment for counts 1 and 4 because both convictions were based on the same act -- the driving of the vehicle that he did not

9.

own. He correctly points out that he was convicted of violating Vehicle Code section 10851, subdivision (a) because he was driving a vehicle he did not own without the owner's consent, and also correctly points out that he was convicted of violating Vehicle Code section 2800.2, subdivision (a) because he drove this same vehicle in a reckless manner. Since both convictions arose out of the act of driving the vehicle, Rey asserts he is being punished twice for the same act.

We disagree because there is overwhelming evidence that he harbored separate intents and objectives when he committed these two violations. As Rey stated to the police, he obtained a vehicle he knew probably was stolen because he needed transportation. His intent was to drive from point A to point B. The violation of Vehicle Code section 10851, subdivision (a) was complete when he took possession of the stolen vehicle and drove away.

When he was observed by police officers driving a stolen vehicle, his intent changed. He no longer was driving to reach point B; he now was seeking to avoid arrest. The attempt to escape was a separate act and had a separate intent. His conviction for violating Vehicle Code section 2800.2, subdivision (a) resulted from the new act and intent and therefore precludes application of section 654.

Rey also argues that section 654 precludes punishment for the Vehicle Code section 2800.2 because he had the same intent as the conviction in count 3 for resisting arrest, in violation of section 69. We disagree. There was substantial evidence that Rey also had separate intents for these two convictions.

Undoubtedly, his intent when fleeing the officers was to avoid arrest. By the time he resisted arrest by kicking and swinging at the officers, however, there was sufficient evidence that his intent was to harm the officers, not escape arrest. By that time he had been struck by the Taser, was down on the ground, and the officers were wrestling with him in an attempt to place him in handcuffs. Rey likely by this time knew he was going

10.

to be arrested and had formed a different intent -- to inflict as much harm on the arresting officers as was possible. Accordingly, section 654 does not apply in this case.

## DISPOSITION

The judgment is affirmed.

_____
CORNELL, J.

WE CONCUR:


_____
LEVY, Acting P.J.


_____
KANE, J.