Filed 1/30/25  P. v. Dennis CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>NATHANIEL DONIEL DENNIS,<br><br>    Defendant and Appellant. | B332987<br><br>(Los Angeles County<br>Super. Ct. No. TA063518) |

APPEAL from an order of the Superior Court of Los Angeles County, Teresa P. Magno, Judge.  Affirmed.

Alan Siraco, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Wyatt E. Bloomfield and Christopher G. Sanchez, Deputy Attorneys General, for Plaintiff and Respondent.

_____

The issue before us is whether the trial court abused its discretion in not striking a prior "strike conviction," that is, a strike conviction within the definition of the "Three Strikes" Law (Pen. Code, § 667(b)–(i)), when the court resentenced defendant pursuant to Penal Code section 1172.75.[1] Section 1172.75 provides for resentencing if a defendant received a one-year prior prison enhancement except for prior prison sexually violent offenses.[2] We conclude the court did not abuse its discretion. As set forth in our discussion, defendant raises arguments he forfeited by not raising them below, or that are not supported by the record and applicable legal authority.

Even though the People below conceded defendant was entitled to resentencing because of the now invalid prior prison enhancement, on appeal, respondent asserts we have no jurisdiction to entertain defendant's appeal from the trial court's

---

[1] Undesignated statuary citations are to the Penal Code.

[2] Before January 1, 2020, section 667.5, subdivision (b) required trial courts to impose a one-year sentence enhancement for each prior prison or county jail term the defendant served if the defendant had not remained free of custody for the preceding five years. (§ 667.5, former subd. (b); *People v. Jennings* (2019) 42 Cal.App.5th 664, 681 (*Jennings*).)

Effective January 1, 2020, Senate Bill No. 136 (2019–2020 Reg. Sess.) amended section 667.5, subdivision (b), by limiting the enhancement to prior prison terms for sexually violent offenses. (§ 667.5, subd. (b); *Jennings, supra,* 42 Cal.App.5th at p. 681.) In 2021, the Legislature enacted Senate Bill No. 483 (2021–2022 Reg. Sess.), which made Senate Bill No. 136's changes to the law retroactive (Stats. 2021, ch. 728, § 1), and added former section 1171.1, now section 1172.75, to the Penal Code. (Stats. 2021, ch. 728, § 3; Stats. 2022, ch. 58, § 12.)

2

refusal to strike a prior strike offense when it resentenced defendant. More specifically, the People contend because the California Department of Corrections and Rehabilitation (CDCR) did not initiate the resentencing process, neither the trial court nor we have jurisdiction to entertain defendant's appeal from the trial court's resentencing order. As set forth in our Discussion, we deem defendant's motion for resentencing filed in the trial court to be a petition for writ of habeas corpus. We also deem defendant's opening brief on appeal to be a petition for writ of habeas corpus. Respondent's jurisdictional challenge is thus moot.

## PROCEDURAL BACKGROUND

In 2002, a jury convicted defendant of attempted premeditated murder, corporal injury to a spouse, cohabitant, or child's parent, assault with a firearm, shooting at an inhabited dwelling, four counts of criminal threats, possession of a firearm by a felon, and two counts of battery with serious injury. The jury found true several enhancements. Pursuant to the Three Strikes law, the trial court found defendant suffered a prior strike conviction. (*People v. Dennis* (Mar. 24, 2004, B165979) [nonpub. opn.].)

The original sentencing court indicated, "This is a second strike case" referring to the Three Strikes law and the court sentenced defendant to a total of 53 years to life. The original abstract of judgment dated April 2, 2003 erroneously failed to include the section 667.5, subdivision (b) and section 667, subdivision (a)(1) enhancements imposed by the original sentencing court.

In August 2023, the trial court stated, and it is undisputed, that the abstract of judgment was amended because the CDCR

3

"sent [the trial] court a letter indicating that the abstract of judgment did not contain either the five-year or one-year prior." An amended abstract of judgment dated February 7, 2022 included a one-year sentence for the section 667.5, subdivision (b) prison prior.[3]

On February 9, 2023, the People conceded defendant "is eligible" for resentencing pursuant to section 1172.75.[4] It was undisputed that the original sentencing court imposed a one-year sentence for the section 667.5, subdivision (b) enhancement, which is now invalid under section 1172.75.

After a resentencing hearing on August 17, 2023, the trial court struck the five-year section 667, subdivision (a)(1) and the (now invalid) one-year section 667.5, subdivision (b) enhancements. The court denied defendant's request to strike

---

[3] The minute order detailing the original sentencing court's sentencing choices reflects that the court included the section 667.5, subdivision (b) one-year enhancement and the section 667, subdivision (a)(1) five-year enhancement, but failed also to include those enhancements in the 2003 abstract of judgment. The terms not stayed by the original sentencing court totaled 47 years to life. The enhancements added the additional six years to reach the 53-years-to life sentence. A trial court always has jurisdiction to correct clerical errors in its judgments to reflect the true facts. (*People v. Mitchell* (2001) 26 Cal.4th 181, 185.)

[4] Section 1172.75 provides in relevant part: "(a) Any sentence enhancement that was imposed prior to January 1, 2020, pursuant to subdivision (b) of Section 667.5, except for any enhancement imposed for a prior conviction for a sexually violent offense . . . is legally invalid."

his prior strike conviction. Defendant's only challenge on appeal is to the court's refusal to strike the prior strike conviction.

## FACTUAL BACKGROUND

### 1. *Defendant's criminal history*

Defendant was born in May 1967. Even before committing the offense underlying defendant's current incarceration, defendant had an extensive criminal record. In 1984, when he was a juvenile, defendant stole a car and served one year in a camp placement. In 1987, defendant committed a bank robbery. On March 1, 1997, he was discharged from parole for that offense. On November 2, 1997, defendant was convicted of possession of marijuana, and the trial court initially suspended his sentence. After defendant violated probation, the court revoked probation and sentenced defendant to two years in prison. In 1998, defendant was convicted of infliction of corporal injury on a spouse and sentenced to two years in state prison.

### 2. *Facts underlying defendant's convictions for which he sought resentencing*

In defendant's appeal from the judgment of conviction, we described the facts underlying defendant's current convictions as follows: "Defendant and Quinn Carr had been in a relationship for several years. They sometimes lived together in a house in Compton with Quinn's parents, Mary Carr and Willie Smith, and her brother, Castillo Carr. Defendant and Quinn were parents of a baby girl.

"Quinn testified that in early 2002 defendant was living with her in the Carr residence. During that time, defendant was acting very possessively of Quinn. He said that he would hurt

5

Quinn if he saw her with anyone else and that if he could not have her, no one else could. Quinn told defendant that she was tired of being abused by him.

"On January 20, 2002, Quinn had a date with another man. During the day, defendant called Quinn several times from his mother's house. Quinn told defendant that she wanted to end the relationship. Defendant's mother testified that following this conversation defendant seemed agitated, borrowed her car, and left the house.

"Several hours later, around 10:00 p.m., Quinn's date drove Quinn back to the Carr residence. When Quinn started walking toward the house, defendant emerged from behind a tree with a metal baseball bat, stating, ' "Aha, bitch. You are busted." ' Defendant hit Quinn with the bat on her head, mouth, arms, ribs, back, knees, and feet, 'everywhere on [her] body.' Quinn fell to the ground, put her arms over her head in an attempt to protect herself, and screamed for help. She felt like she was going to die as defendant continued to hit her for two or three minutes. Castillo came out of the house and asked defendant to stop hitting Quinn, but defendant hit Quinn even harder. Smith next came out and defendant fled. Quinn was taken to the hospital, where she was treated for head lacerations, broken arms, and bruising.

"As a result of the January 20 incident, defendant was convicted of attempted premeditated murder (count 1), corporal injury to the mother of his child (count 2), and battery with serious bodily injury (count 12).[5]

---

[5] The reference to count 12 appears to be in error as that count refers only to the January 28, 2002 incident.

6

"On the morning of January 28, 2002, Mary was approaching the front door of the residence after getting out of her car when defendant approached, pointed a handgun at her head, and said, ' "I want Quinn and the baby." ' Quinn, who was inside and had heard Mary's car pull up, was opening the front door when she heard Mary tell her not to open it because defendant was outside with a gun. Defendant struggled for the keys that were in Mary's hand. Mary asked defendant if he was going to shoot her, and he said that he would do so if Mary did not open the door. Defendant also hit Mary on the head with the barrel of the gun.

"Meanwhile, Smith opened the front door and stood inside behind a locked screen door. Defendant told Smith to open the screen door and threatened to shoot him if he did not do so. Smith did not comply, and defendant fired his gun at the doorknob and lock. Defendant also fired one or two shots that hit Mary in the head. Defendant next began to reload his gun, but fled when he heard sirens approaching. Mary was taken to the hospital, where she was treated for 'two wounds in the left frontal temporal area.'

"While the police were still at the Carr residence, defendant called Quinn several times. He said that he was not going to stop until Quinn stopped breathing and that Quinn should get money from the bank so he could take her and the baby somewhere else. He also said that he would be back to finish the job and to ' "[t]ell [Castillo] that he's next." '

"Quinn told Castillo of defendant's comment. At trial, when Castillo was asked what he thought when Quinn told him defendant's words, he responded, 'I didn't think nothing.' But when asked what he thought defendant meant, Castillo said,

'That he was going to try to kill me, too.' Castillo thought so '[b]ecause [defendant] tried to kill everyone else in my house.'

"As a result of the January 28 incident, defendant was convicted of assault with a firearm on Mary (count 4); shooting at an inhabited dwelling house (count 5); criminal threats against Mary (count 6), Quinn (count 7), Smith (count 8), and Castillo (count 9); possession of a firearm by a convicted felon (count 10); and battery of Mary with serious bodily injury (count 12). He was found not guilty of the attempted murder of Mary (count 3)." (*People v. Dennis*, *supra*, B165979, fn. omitted.)

### 3. *Defendant's request for resentencing*

On June 3, 2022, defendant filed a resentencing petition pursuant to former section 1170.95 (renumbered as section 1172.6). On December 1, 2022, defendant filed a "motion to withdraw [his] 1170.95 petition" and to "proceed with resentencing pursuant to P.C. 1172.75 . . . ." (Some capitalization omitted.) Among other things, defendant asked the court to dismiss his 1987 bank robbery strike conviction under *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497, 504 (*Romero*).[6]

In *Romero,* our high court " 'held that a trial court may strike or vacate an allegation or finding under the Three Strikes law that a defendant has previously been convicted of a serious and/or violent felony, on its own motion, "in furtherance of justice" pursuant to . . . section 1385(a).' [Citation.]" (*People v. Carmony* (2004) 33 Cal.4th 367, 373 (*Carmony*).)

---

[6] Defendant also argued that the court should strike the five-year section 667, subdivision (a) enhancement pursuant to section 1385, subdivision (c)(2), which the court did.

8

Defendant represented that his current parole eligibility date was in February 2028. Defendant argued that "by striking the strike, the Court can modify Mr. Dennis' sentence to allow him to become immediately eligible for parole consideration. The basis for this request is Mr. Dennis' exemplary conduct while in prison. The strike alleged in this case i[s] a conviction for bank robbery from April 24, 1987" and is remote. On appeal, however, defendant no longer contends that even if his motion were granted, he would be eligible for immediate parole.

A "Mitigation and Social History Report" attached to defendant's motion, indicated that defendant's stepfather physically and sexually abused defendant. As a result of the abuse defendant spent a week in MacLaren Hall where he " 'learned to be a fighter.' " Also according to the mitigation report, at age 14, defendant joined a gang. Defendant's "moniker was 'psycho' because of his willingness to fight." Someone shot defendant when he was 15 years old, and he reported being shot additional times. The mitigation report further indicated that in 2014, defendant renounced his gang. He completed numerous courses while incarcerated including a "basic course in nonviolent conflict resolution", a "victim awareness" correspondence class, multiple domestic violence courses, a 12-step program, "creating a healing society" program, and a workshop "for training in nonviolence." (Capitalization omitted.) Defendant also obtained two associate's degrees.

The mitigation expert who wrote the report concluded defendant's "brain development was altered starting at a young age due to sexual abuse, violence in the home, and his participation in gang violence." "In the past two decades [defendant] has managed to transform his trauma responses."

9

A document entitled "CDCR Chron" and attached to defendant's motion, indicated that on March 15, 2003, while serving as an inmate, defendant struck a sergeant "in the head with his fist rupturing [the sergeant's] cornea and iris, and damaging the lens to the eye." On November 19, 2003, while defendant was incarcerated, he pleaded guilty to "mutual combat." In 2010, defendant was placed in a special program because of "behavior that could lead to violence" and was provided all meals in his cell. After that incident, no disciplinary issues were reported.

In 2021, defendant wrote two essays, which he submitted in support of his resentencing request. In the first entitled "My Pathway to Crime," defendant wrote that his stepfather abused his mother, throwing her against a wall and choking her in defendant's presence. Defendant's stepfather also abused defendant.

Defendant wrote, "I was 15 years old when I slapped my first girlfriend. I saw her flirting with one of my homeboys, so I slapped her and threw her in a dumpster." "I eventually ended up robbing a bank and spent over six years in Federal prison." Defendant acknowledged hitting a former girlfriend and attacking Quinn Carr "with a bat" and then "look[ing] down at her broken body . . . ." After that, defendant assaulted Carr's mother with his gun, hitting her in the head. While incarcerated, defendant hit a sergeant and "hurt him pretty bad." According to defendant, after a medical issue, he chose to "accept personal responsibility for [his] actions." Defendant explained that he both left his gang and enrolled in school.

In his second essay entitled "My Road to Rehabilitation" (some capitalization omitted), defendant reported that he learned

that "violence is never an option." He learned "insight on how I became the monster I was." He saw that he previously had "conducted [himself] as a controlling monster." Defendant indicated he was "ashamed of what [he] did."

### 4. *The People agreed to resentencing, but opposed striking a prior-strike offense*

The People conceded defendant was eligible for resentencing pursuant to section 1172.75. The People opposed striking the strike offense because the circumstance of defendant's offenses showed extreme brutality and violence. The People argued the 1987 conviction was not remote because defendant was incarcerated for the majority of time that elapsed prior to his convictions in the current case. The People further emphasized, "2 days after he was sentenced in this matter, the defendant punched a sergeant in his jail module." (Italics omitted.) Defendant injured the sergeant's eye. A report attached to the People's opposition indicated that the sergeant "sustained severe trauma to his [right] eye" and his cornea was "detached" from his eye. The sergeant received a cornea transplant and required extensive rehabilitation.[7]

---

[7] Defendant filed pro per supplemental papers in the trial court. Citing section 1172.7, defendant argued he was eligible for release. That statute applies to sentencing enhancements pursuant to section 11370.2 of the Health and Safety Code. (§ 1172.7, subd. (a).) This case does not include an enhancement pursuant to the Health and Safety Code.

11

### 5. *The trial court resentences defendant without striking his prior-strike conviction*

At the resentencing hearing, the trial court indicated it wanted to consider each sentencing decision separately. The court stated with respect to the request to strike the bank robbery strike offense, it had to consider "the nature and circumstances of the defendant's currently charged crimes, the defendant's prior serious or violent felonies, the defendant's criminal history, and particulars regarding the defendant's background, character and prospects." The court further indicated the "remoteness" of the strike offense was relevant. The court noted that the original sentencing court described the case as " 'a particularly aggravating case.' " The court summarized defendant's criminal history. The resentencing court acknowledged that after 2004, defendant "did very well; stopped getting into trouble, actually engaged in activities that bettered himself, [and] educated himself."

The court then asked for argument. Defense counsel contended this case presented similar issues to evaluating whether an inmate is suitable for parole, specifically whether the inmate presents a continuing threat to public safety. Defense counsel later clarified that it is the job of the parole board "to figure out if someone is a danger to the community and if they have parole plans . . . ."

After defense counsel referenced case law concerning parole, the trial court asked defense counsel to limit his argument to factors relevant to whether to strike a strike conviction. Defense counsel responded the court should consider "remoteness in time" and "[defendant's] youth at the time" of the

bank robbery.  Defense counsel emphasized defendant's "extraordinary" conduct since 2004 during his incarceration.

The People opposed striking the strike conviction.  The prosecutor emphasized the nature of the offenses underlying defendant's incarceration.  The prosecutor also argued that defendant's offenses were not remote in time because defendant had been incarcerated most of the time between the bank robbery and his offenses.  The prosecutor asserted the crimes were extremely violent and involved a bat and a firearm.

Defendant made the following statement to the court:  "[A] lot of the stuff that occurred back then was horrendous . . . ."  "In 1987, truly, I did rob a bank, and I stayed up in there six years, eight months.  I was paroled in 1992.  I caught the violation in 1994.  I paroled after nine months, in 1995.  I stayed out, I believe it was like two to three years."  Defendant continued, "I was arrested in 1998 for domestic violence . . . . I pled guilty because I knew I was wrong."  Defendant admitted that he violated his parole and that it was his second parole violation.  Defendant admitted attacking Carr with a bat.  Defendant also admitted injuring the sergeant who had been working in the prison.  Defendant stated, "[B]ottom line is that I'm not the same person I was . . . ."

The court then explained its rationale for denying defendant's request to strike his prior strike offense.  The court described the circumstances of defendant's offenses and noted they arose out of separate incidents.  The court quoted the original sentencing judge's description of  the case as " 'particularly aggravating.' "  The court reviewed defendant's criminal history dating back to 1984.  The court noted that after defendant's 1987 bank robbery, defendant was out of custody only

13

for "brief stints." The court also stated that after the original sentencing, defendant punched a sergeant. After that incident, defendant "stopped getting into trouble, actually engaged in activities that bettered himself . . . ."

The court concluded it was not in the interest of justice to strike the prior strike offense. "I do believe that based on the defendant's criminal history that he falls within the spirit of the Three Strikes law and the remoteness argument is not persuasive at all. Any remoteness-in-time argument is offset by the fact that since the strike, Mr. Dennis, unfortunately had either picked up new cases and/or had been in custody." The court reiterated that it considered all of the *Romero* factors. The court indicated it "recognize[d] that Mr. Dennis had done well." The court told defendant, "[Y]ou having done well . . . is relevant to this hearing . . . ."

## DISCUSSION

We begin with respondent's challenge to the jurisdiction of the trial court to consider defendant's request for resentencing pursuant to section 1172.75. We then provide background on the Three Strikes law. As to defendant's appellate challenges, we first address whether the trial court abused its discretion in denying his motion to strike a strike conviction pursuant to *Romero* and conclude the applicable law and record do not support that the trial court abused its discretion in not striking the prior strike conviction.

We next address defendant's argument that the trial court abused its discretion in not applying section 1385, subdivision (c)(2) in deciding whether to strike defendant's strike conviction. We conclude defendant forfeited that argument by not raising it below and that on its merits, the argument fails.

14

We next address defendant's argument based on section 1172.1, which similarly is forfeited and lacking in merit.

Lastly, we conclude case authority defendant argues supports reversal is inapplicable.

## A. Because We Deem Defendant's Motion for Resentencing and His Appeal to be Petitions for Writ of Habeas Corpus, Respondent's Jurisdictional Argument Is Moot

The parties do not dispute that that on the merits, defendant was entitled to section 1172.75 resentencing because his prior offense did not involve sexual violence and the original sentencing court had imposed a section 667.5, subdivision (b) enhancement, which is now invalid. To repeat, the prosecutor so conceded in the trial court.

On appeal, respondent argues for the first time that the trial court did not have subject matter jurisdiction to resentence defendant because the CDCR did not notify the trial court of his eligibility.[8] Respondent explains, "[T]he trial court lacked subject matter jurisdiction to resentence [defendant] because section 1172.75 does not allow [an inmate] to initiate proceedings with a petition." Respondent requests this court reverse the trial court's order resentencing defendant.

---

[8] Section 1172.75 subdivision (b) provides: "The Secretary of the [CDCR] and the county correctional administrator of each county shall identify those persons in their custody currently serving a term for a judgment that includes an enhancement described in subdivision (a) and shall provide the name of each person, along with the person's date of birth and the relevant case number or docket number, to the sentencing court that imposed the enhancement."

" 'Under the general common law rule, a trial court is deprived of jurisdiction to resentence a criminal defendant once execution of the sentence has commenced.' [Citation.]" (*People v. Codinha* (2023) 92 Cal.App.5th 976, 984.)  As respondent argues, *People v. Burgess* (2022) 86 Cal.App.5th 375, 382–384 (*Burgess*) followed by *People v. Escobedo* (2023) 95 Cal.App.5th 440, 447 (*Escobedo*), holds that unless the CDCR is involved in the resentencing process, the trial court lacks jurisdiction to resentence a defendant pursuant to section 1172.75, *Burgess* and *Escobedo* thus dismissed the resentencing appeals.  (*Burgess*, *supra*, at p. 385; *Escobedo*, *supra*, at p. 444.)

*Burgess* explained, the Legislature created a procedure "for the orderly implementation of relief for affected defendants" and the procedure was "triggered by receipt of the necessary information from the CDCR Secretary or a county correctional administrator, not by any individual defendant."  (*Burgess*, *supra*, 86 Cal.App.5th at p. 384.)  Neither *Burgess* nor *Escobedo* followed a resentencing hearing at which the trial court resentenced the defendant and the People conceded the defendant was entitled to resentencing.

Respondent does not request this court follow *Burgess or Escobedo* to the extent those cases dismissed the appeals.  Instead, respondent requests this court reverse the trial court's resentencing order, a course of action that would eventually require holding new proceedings both in the trial court and this court after receipt of a letter from the CDCR.

The procedure respondent requests in this case undermines judicial economy and for that reason, we deem defendant's motion for resentencing pursuant to section 1172.75 filed in the trial court to be a petition for writ of habeas corpus

16

seeking resentencing pursuant to section 1172.75. " 'A defendant who is serving a longer sentence than the law allows may [always] challenge the sentence in a petition for a writ of habeas corpus. Indeed, the purpose of the writ is to give summary relief against such illegal restraints of personal liberty.' [Citation.]" (*Escobedo*, *supra*, 95 Cal.App.5th at p. 449.)

We also choose to deem defendant's appeal to be a petition for writ of habeas corpus filed in the appellate court. (*In re Dohner* (2002) 79 Cal.App.5th 590, 594 [court has discretion to deem an appeal from the denial of a petition for writ of habeas corpus to be an original habeas petition filed in Court of Appeal]; *People v. Garrett* (1998) 67 Cal.App.4th 1419, 1423 [appellate court deemed appeal of denial of writ of habeas corpus, which does not lie, as an original petition in interest of judicial economy].) At oral argument, respondent agreed to this procedure under the peculiar circumstances of this case where the abstract of judgment did not correctly reflect defendant's enhancements. As such, respondent's jurisdictional challenge is moot. (*Escobedo*, *supra*, 95 Cal.App.5th at p. 449.)

## B.      Background on the Three Strikes Law

The purpose of the Three Strikes law (§ 667, subds.(b)–(i), added by Stats. 1994, ch. 12, § 1, effective Mar. 7, 1994; see also § 1170.12, added by initiative, Gen. Elect. (Nov. 8, 1994) [Proposition 184]) is to punish recidivists more harshly. (*People v. Davis* (1997) 15 Cal.4th 1096, 1099.) The Three Strikes law is an alternative sentencing scheme applicable to habitual offenders. (*Romero, supra*, 13 Cal.4th at p. 527; see *People v. Carbajal* (2013) 56 Cal.4th 521, 534 [" 'Like the Three Strikes law, the One Strike law is an alternative sentencing scheme' "]; *People v. Anderson* (2009) 47 Cal.4th 92, 102 [same].) It

17

"establishes a sentencing norm" and "carefully circumscribes the trial court's power to depart from this norm." (*Carmony*, *supra*, 33 Cal.4th at p. 378.) The law creates "a strong presumption that any sentence that conforms to these sentencing norms is both rational and proper." (*Ibid.*)

As originally enacted, the Three Strikes law required sentencing in the following manner: "When a defendant is convicted of a felony, and it is pleaded and proved that he has committed one or more prior felonies defined as 'violent' or 'serious,' sentencing proceeds under the Three Strikes law '[n]otwithstanding any other law.' (§ 667, subd. (c); § 1170.12, subd. (a).) Prior felonies qualifying as 'serious' or 'violent' are taken into account regardless of their age. (§ 667, subd. (c)(3); § 1170.12, subd. (a)(3).)" (*Romero*, *supra*, 13 Cal.4th at p. 505.) As originally enacted, the Three Strikes law did not require the current felony be "violent" or "serious." (§ 667, subd. (c); § 1170.12, subd. (a).) If the defendant has only one qualifying prior felony conviction, the prescribed term of imprisonment (or the minimum term if the current offense calls for an indeterminate sentence) is " 'twice the term otherwise provided as punishment for the current felony conviction.' [Citation.]" (*Romero*, *supra*, at pp. 505–506.) A third strike offender received a sentence of a minimum of 25 years to life regardless of whether the current felony conviction was serious or violent. (*People v. Johnson* (2015) 61 Cal.4th 674, 680 (*Johnson*).)

In 2012, the voters approved Proposition 36, the Three Strikes Reform Act of 2012 (Reform Act), which amended sections 667 and 1170.12 and added section 1170.126. (*People v. White* (2014) 223 Cal.App.4th 512, 517.) The Reform Act, an initiative measure, prospectively lessened penalties under the

18

Three Strikes law for third strike offenders.  (Former §§ 667, subds. (b)–(j), 1170.12.)  Under its revised penalty provisions, "many third strike defendants are excepted from the provision imposing an indeterminate life sentence (see [former] § 1170.12, subd. (c)(2)(A)) and are instead sentenced in the same way as second strike defendants (see *id.*, subd. (c)(2)(C)):  that is, they receive a term equal to 'twice the term otherwise provided as punishment for the current felony conviction' (*id.*, subd. (c)(1))." (*People v. Conley* (2016) 63 Cal.4th 646, 653.)  The Legislature also created a procedure for defendants retroactively to seek resentencing pursuant to section 1170.126.  (*Johnson, supra*, 61 Cal.4th at p. 682.)  Section 1170.126 requires the trial court consider whether the inmate poses a risk of danger to public safety, and an inmate sentenced as a third strike offender "will be denied recall of his or her sentence if 'the court, in its discretion, determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety.'  [Citation.]"  (*Id.* at p. 682.)

## C. Defendant Demonstrates No Abuse of Discretion in the Court's Evaluation of the *Romero* Factors and Denial of His *Romero* Motion

A trial court may strike prior felony conviction allegations in cases brought under the Three Strikes law when dismissal is "in furtherance of justice."  (§ 1385, subd. (a); *Romero, supra*, 13 Cal.4th at pp. 529–530.)

We review the court's decision not to strike a strike conviction for abuse of discretion.  (*Carmony, supra*, 33 Cal.4th at p. 375.)  The abuse of discretion standard is highly deferential. (*People v. Mendoza* (2023) 88 Cal.App.5th 287, 298.)  Defendant has the burden to demonstrate "that the sentencing decision was

19

irrational or arbitrary." (*Carmony*, *supra*, at p. 376.) "A ' "decision will not be reversed merely because reasonable people might disagree." ' " (*Id.* at p. 377.)

The standards for striking a prior strike are "stringent" and the circumstances must be " 'extraordinary . . . by which a career criminal can be deemed to fall outside the spirit of' " the law. (*Carmony*, *supra*, 33 Cal.4th at pp. 377–378.) Factors to consider are "the nature of the charged and prior offenses and the defendant's 'background, character, and prospects.' [Citation.]" (*Wheeler v. Appellate Division of Superior Court* (2024) 15 Cal.5th 1193, 1207.) These factors may lead a trial court to conclude that the defendant may be deemed outside the Three Strikes scheme's spirit, in whole or in part, and for that reason strike a prior strike conviction. (*Carmony*, *supra*, at p. 377.) If these factors "manifestly support the striking of a prior conviction and no reasonable minds could differ—the failure to strike would constitute an abuse of discretion." (*Id.* at p. 378.) The trial court may not rely exclusively on the nature and circumstances of a defendant's offense to the exclusion of all other factors. (*Id.* at p. 379.)

Defendant argues the trial court abused its discretion in denying his request to strike his prior strike for committing a bank robbery. (Capitalization omitted.) According to defendant, "Limiting itself to Dennis's past violence that resulted in the Three Strikes sentence, or giving those circumstances preemptive weight, contrary to settled law pertinent to *Romero* proceedings, the trial court abused its discretion." Defendant emphasizes the evidence in the mitigation report and his personal essays and argues that evidence shows the trial court should have stricken his prior strike conviction.

The record does not support defendant's premise that that the trial court ignored his progress during his incarceration. The record also does not support that the trial court gave " 'primary weight' " to the violence involved in defendant's convictions. The trial court indicated it had considered all the *Romero* factors and correctly identified those factors as including the "particulars regarding the defendant's background, character and prospects." The court further recognized "Mr. Dennis had done well" while incarcerated. More specifically, the court stated that after 2004, defendant "did very well; stopped getting into trouble, actually engaged in activities that bettered himself, [and] educated himself." The court also told defendant that "you having done well . . . is relevant to this hearing . . . ." The fact that the trial court found defendant's criminal history important does not show the court failed to consider other *Romero* factors.

Defendant has not shown that this is an "extraordinary" case such that no reasonable trial court could conclude he fell within the spirit of the Three Strikes law. (See *People v. Anderson* (2019) 42 Cal.App.5th 780, 786 [continuous criminal conduct places a defendant within the meaning of the Three Strikes law]; *People v. Strong* (2001) 87 Cal.App.4th 328, 331–332 [A defendant with a "virtually uninterrupted" series of crimes does not fall outside the spirit of the Three Strikes law].) Notwithstanding defendant's progress during his incarceration, it is undisputed he had a continuous course of criminal conduct from 1987 through 2002 including while on parole and during his incarceration, that he has been incarcerated since 2002, and that his numerous commitment offenses, including attempted murder, involved great violence. The trial court did not abuse its

discretion in concluding that defendant fell within the spirit of the Three Strikes law.

Finally, defendant argues that the trial court's failure to strike his strike offense prejudiced him.  We do not consider that contention further because the trial court did not abuse its discretion in not striking his prior strike conviction.

## D.    Section 1385, Subdivision (C) Does Not Apply to Three Strikes Sentences and Defendant Has Forfeited His Contention to the Contrary

Defendant argues that the trial court was required to apply the factors identified in section 1385, subdivision (c) when determining whether to strike a prior strike conviction.  According to defendant, those factors require dismissing the prior strike offense.

### 1.    *Defendant forfeited his contention that section 1385, subdivision (c ) applies to Three Strikes sentences*

In the trial court, defendant based his request to strike the 1987 strike on *Romero*, not section 1385, subdivision (c).  " 'A party in a criminal case may not, on appeal, raise "claims involving the trial court's failure to properly make or articulate its discretionary sentencing choices" if the party did not object to the sentence at trial. . . .' " [Citations.]" (*People v. Scott* (2015) 61 Cal.4th 363, 406.)  "Strong policy reasons support this rule:  'It is both unfair and inefficient to permit a claim of error on appeal that, if timely brought to the attention of the trial court, could have been easily corrected or avoided.  [Citations.]'  [Citation.]" (*People v. Stowell* (2003) 31 Cal.4th 1107, 1114.)  Therefore, defendant forfeited his argument based on section 1385.

22

*2. We agree with other courts' conclusion that section 1385, subdivision (c) does not apply to alternative sentencing regimes*

Even if defendant had preserved his argument, he demonstrates no error. Section 1385, subdivision (c) provides:

"(c)(1) Notwithstanding any other law, the court shall dismiss an *enhancement* if it is in the furtherance of justice to do so, except if dismissal of that *enhancement* is prohibited by any initiative statute." (Italics added.) Section 1385, subdivision (c)(2) identifies numerous mitigating factors a trial court is required to consider in determining whether to dismiss an enhancement.[9]

---

[9] Section 1385, subdivision (c)(2) provides:

"(2) In exercising its discretion under this subdivision, the court shall consider and afford great weight to evidence offered by the defendant to prove that any of the mitigating circumstances in subparagraphs (A) to (I) are present. Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety. 'Endanger public safety' means there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others.

"(A) Application of the enhancement would result in a discriminatory racial impact as described in paragraph (4) of subdivision (a) of Section 745.

"(B) Multiple enhancements are alleged in a single case. In this instance, all enhancements beyond a single enhancement shall be dismissed.

23

On appeal, defendant applies the mitigating factors listed in section 1385, subdivision (c)(2) that became effective on January 1, 2022. Appellate courts, however, have uniformly rejected that the mitigating factors identified in section 1385, subdivision (c)(2) apply to a request to strike a strike for purposes of the Three Strikes law. (*People v. Dowdy* (2024) 107 Cal.App.5th 1; *People v. Burke* (2023) 89 Cal.App.5th 237 (*Burke*); *People v. Olay* (2023) 98 Cal.App.5th 60, 67 (*Olay*); *People v. Dain* (2024) 99 Cal.App.5th 399, 404, review granted on another issue May 29, 2024, S283924; see also *People v.*

---

"(C) The application of an enhancement could result in a sentence of over 20 years. In this instance, the enhancement shall be dismissed.

"(D) The current offense is connected to mental illness.

"(E) The current offense is connected to prior victimization or childhood trauma.

"(F) The current offense is not a violent felony as defined in subdivision (c) of Section 667.5.

"(G) The defendant was a juvenile when they committed the current offense or any prior offenses, including criminal convictions and juvenile adjudications, that trigger the enhancement or enhancements applied in the current case.

"(H) The enhancement is based on a prior conviction that is over five years old.

"(I) Though a firearm was used in the current offense, it was inoperable or unloaded." (§ 1385, subd. (c)(2).)

*McDowell* (2024) 99 Cal.App.5th 1147, 1154.)  Defendant argues *Burke* was wrongly decided.  We disagree.

*Burke* reasoned section 1385 applies to dismissal of an " 'enhancement,' " and that " 'ordinarily,' " words used in a statute are " 'presumed to be used in accordance with their established legal or technical meaning.' " (*Burke, supra*, 89 Cal.App.5th at p. 243, quoting *People v. Carter* (1996) 48 Cal.App.4th 1536, 1540.)  It further reasoned that "enhancement" has a "well-established technical meaning in California law," to wit, it is " ' "an additional term of imprisonment added to the base term." ' [Citations.]" (*Burke, supra*, at p. 243.)  Equally "well established [is] that the Three Strikes law is not an enhancement; it is an alternative sentencing scheme." (*Ibid*.)  Although the legislative history of section 1385 was before the court (*Burke*, at p. 242), and in a footnote the court observed, "[M]uch of the legislative history is inconsistent with this plain language," it concluded, "To the extent this history reflects a legislative intent different than that expressed in the plain language of the bill, that is a matter for the Legislature to correct." (*Burke*, at pp. 243–244, fn. 3.)

*Olay, supra*, 98 Cal.App.5th 60 agreed with *Burke*'s "ultimate conclusion" in rejecting that a trial court had to consider section 1385, subdivision (c) mitigating factors in deciding whether to strike a prior strike conviction.  (*Olay, supra*, at p. 67.)  It also addressed an argument apparently not made in *Burke* that section 1385, subdivision (c)(2)(G)'s[10] reference to a

---

[10]  One of the mitigating factors in section 1385, subdivision (c)(2) is subdivision(c)(2)(G):  "The defendant was a juvenile when they committed the current offense or any prior

25

criminal conviction or juvenile conviction counseled against applying the plain meaning of "enhancement" because no enhancement is triggered by a juvenile adjudication, but a juvenile conviction can still be a strike.  (*Olay*, at p. 66.)  In doing so, *Olay* observed, "[W]e are skeptical the Legislature would have expressed an intent to reject the well-established legal meaning of 'enhancement' in such a roundabout manner by obliquely referencing 'juvenile adjudications' as one of the relevant mitigating circumstances."  It also concluded, "The legislative history confirms the Legislature had no such intent."  (*Id.* at p. 67.)  Specifically, *Olay* relied on the Assembly Committee on Public Safety's June 2021 bill analysis of Senate Bill No. 81, which distinguished an " 'enhancement' " from " 'an alternative penalty scheme' " like the Three Strikes law and expressly recited that " '[t]he presumption created by this bill applies to enhancements [ ] *but does not encompass alternative penalty schemes.*' "  (*Olay*, at p. 67, quoting Assem. Com. on Public Safety, Analysis of Sen. Bill No. 81, as amended Apr. 27, 2021, at p. 6, italics added.)

We agree with *Burke* and *Olay* that section 1385, subdivision (c) applies to enhancements not to alternate sentences like the Three Strikes law.  Because section 1385, subdivision (c) does not apply, we do not consider defendant's argument that the factors identified in that subdivision demonstrate the trial court committed reversable error in refusing to strike defendant's strike conviction.

---

offenses, including criminal convictions and juvenile adjudications, that trigger the enhancement or enhancements applied in the current case."

26

**E. Defendant Forfeited His Argument Based on Section 1172.1 and the Argument Fails on its Merits**

Defendant cites section 1172.1 in arguing that it "adds specific factors the court must consider" in resentencing. Defendant does not explain or show that section 1172.1 sets forth factors relevant to a trial court's determination whether to strike a prior strike conviction. Defendant therefore does not show the relevance of section 1172.1 to the sole issue he raises on appeal— whether the court erred in denying his motion to strike his 1987 bank robbery conviction. In any event, defendant has forfeited reliance on section 1172.1.

Section 1172.1, subdivision (a) provides: "When a defendant, upon conviction for a felony offense, has been committed to the custody of the Secretary of the [CDCR] or to the custody of the county correctional administrator pursuant to subdivision (h) of Section 1170, the court may, on its own motion, within 120 days of the date of commitment or at any time if the applicable sentencing laws at the time of original sentencing are subsequently changed by new statutory authority or case law, at any time upon the recommendation of the secretary or the Board of Parole Hearings in the case of a defendant incarcerated in state prison, the county correctional administrator in the case of a defendant incarcerated in county jail, the district attorney of the county in which the defendant was sentenced, or the Attorney General if the Department of Justice originally prosecuted the case, recall the sentence and commitment previously ordered and resentence the defendant in the same manner as if they had not previously been sentenced, whether or not the defendant is still in custody, and provided the new sentence, if any, is no greater than the initial sentence. Recall and resentencing under this

27

section may be initiated by the original sentencing judge, a judge designated by the presiding judge, or any judge with jurisdiction in the case." (§ 1172.1, subd. (a)(1).) The court is required to state its reasons "for its decision to grant or deny recall and resentencing." (*Id*., subd. (a)(7). Defendant did not rely on section 1172.1 in the trial court to support striking his prior conviction. He therefore has forfeited this challenge. (*People v. Stowell* (2003) 31 Cal.4th 1107, 1114.)

Defendant, moreover, could not have requested that the trial court resentence him pursuant to section 1172.1. The authority to request the trial court to recall a felony sentence under section 1172.1, subdivision (a)(1), is with: the court on its own motion, the secretary of CDCR or the Board of Parole Hearings for state prison commitments, the county correctional administrator for county jail commitments under section 1170, subdivision (h), the district attorney of the county in which the defendant was sentenced, and the Attorney General for cases originally prosecuted by the Department of Justice. (§ 1172.1, subd. (a)(1).) Defendant does not show that any of these entities recommended recall and resentencing. "A defendant is not entitled to file a petition seeking relief from the court under this section. If a defendant requests consideration for relief under this section, the court is not required to respond." (*Id*., subd. (c).) In short, resentencing pursuant to section 1172.1 was not raised in the trial court and defendant does not show the issue is properly before this court.

28

**F.  Defendant Relies on Inapplicable Case Authority, None of Which Demonstrates Error in the Trial Court's Refusal To Strike His Prior Strike Conviction**

Defendant cites *People v. Esparza* (2015) 242 Cal.App.4th 726, 746 (*Esparza*), for the proposition that when deciding whether to strike a prior strike conviction, "the proper focus is on whether the petitioner *currently* poses an unreasonable risk of danger to public safety." *Esparza* does not support that proposition.

*Esparza* discussed the defendant's current risk of danger in the context of considering resentencing under section 1170.126, part of the Three Strikes Reform Act. (*Esparza, supra,* 242 Cal.App.4th at pp. 740–746.) Section 1170.126, subdivision (g) requires the trial court to consider whether "a new sentence would result in an unreasonable risk of danger to public safety." (§ 1170.126, subd. (g)(3).) This case does not involve resentencing under section 1170.126.

Defendant cites cases holding that a court cannot modify a third strike sentence under section 1172.75, an issue currently pending in the Supreme Court. (*People v. Superior Court* (*Guevara*) (2023) 97 Cal.App.5th 978, 981, review granted Mar. 12 2024, S283305; *People v. Santos* (2024) 100 Cal.App.5th 666, 673, review granted May 29, 2024, S284341); *People v. Kimble* (2024) 99 Cal.App.5th 746, 754, review granted Apr. 24, 2024, S284259.) Defendant was a second strike offender, not a third strike offender. Whether or not a trial court can modify a third strike sentence under section 1172.75 is thus not relevant to this appeal.

Defendant cites *In re Shaputis* (2008) 44 Cal.4th 1241, 1255 for the proposition that the trial court's inquiry "cannot be undertaken simply by examining the circumstances of the crime in isolation, without consideration of the passage of time or the attendant changes in the inmate's psychological or mental attitude." *In re Shaputis* involved review of whether a defendant was suitable for parole. (*Id.* at p. 1255.) Here, the trial court was not evaluating defendant's suitability for parole. Defendant fails to explain how jurisprudence regarding eligibility for parole is relevant to this appeal.

In his reply brief, defendant relies on *People v. Gonzalez* (2024) 103 Cal.App.5th 215, which involved a trial court's invocation of public safety over mitigating factors in section 1385, subdivision (c)(2) in refusing to dismiss a firearm enhancement. (*Gonzalez*, *supra*, at pp. 219–220.) *Gonzalez* is not relevant because the issue before us involves an alternative sentence under the Three Strikes law and not an enhancement. (See Discussion, part D, *ante*.)

## DISPOSITION

We deny the petition and affirm the trial court's order resentencing Dennis pursuant to section 1172.75.

NOT TO BE PUBLISHED.

BENDIX, Acting P. J.

We concur:

WEINGART, J.                    M. KIM, J.

30